CITIZENS FOR PRE-TRIAL JUSTICE v GOLDFARB

Docket No. 26827. Submitted February 16, 1978, at Detroit.—Decided
February 20, 1979.

Plaintiffs, the Citizens for Pre-Trial Justice, an unincorporated,
nonprofit association, and five named individuals, filed a class
action against defendants, Charles and Irwin Goldfarb doing
business as Goldfarb Bonding Agency and Carman A. Mitchell
doing business as Carman A. Mitchell Bail Bonds Agency.
Plaintiffs alleged that defendants engaged in illegal business
practices by charging a fee for bail bonds in excess of the
statutory maximum fee of 10% of the face amount and by
requiring collateral which, taken either alone or with the fee,
exceeded the 10% limit. Plaintiffs further alleged that the
statutory provision allowing bondsmen to unilaterally revoke
the bail bond and rearrest the principal unconstitutionally
deprived those individuals of liberty without due process of law.
Plaintiffs sought a declaratory judgment on the merits, a
permanent injunction to prevent future overcharges and revo-
cations and damages. The Wayne Circuit Court, George E.
Bowles, J., entered an order which: 1) allowed the intervention

REFERENCES FOR POINTS IN HEADNOTES
[1] 59 Am Jur 2d, Parties §§ 51, 67, 69.
[2] 59 Am Jur 2d, Parties § 67.
[3, 5] 8 Am Jur 2d, Bail and Recognizance §§ 25, 26.
    51 Am Jur 2d, Limitation of Actions § 103.
[4, 5] 8 Am Jur 2d, Bail and Recognizance § 69.
    51 Am Jur 2d, Limitation of Actions § 4.
[6] 5 Am Jur 2d, Appeal and Error § 966.
[7] 59 Am Jur 2d, Parties §§ 69-71.
[8] 59 Am Jur 2d, Parties § 81.
[9] 59 Am Jur 2d, Parties §§ 71-73.
[10] 73 Am Jur 2d, Statutes § 194.
[11] 8 Am Jur 2d; Bail and Recognizance §§ 7, 68.
    Validity, construction, and application of statutes regulating bail
    bond business. 13 ALR3d 618.
[12] 8 Am Jur 2d, Bail and Recognizance § 57.
[13] 8 Am Jur 2d, Bail and Recognizance §§ 25, 26.
[14] 27 Am Jur 2d, Equity § 57.
[15] 8 Am Jur 2d, Bail and Recognizance §§ 57-59.

and substitution of four individuals for some originally named plaintiffs; 2) defined the class and certified the class action (holding that there were numerous potential plaintiffs, that the four named individuals were proper parties and adequately represented the absent class members' interests and that there were common questions of law and common relief sought); and 3) preliminarily enjoined defendants from either overcharging or summarily rearresting a principal in connection with a bail bond posted in a Michigan criminal case. Defendants appeal by leave granted. *Held:*

1. The appropriate statute of limitations for actions claiming either a statutory overcharge or denial of a constitutional right is the three-year statute applicable to claims for damages for injuries to persons or property.

2. A potential class of 35,000 Michigan criminal defendants who secured release on bail bonds is sufficiently numerous to make a class action appropriate and the likelihood that this group will prove unstable and its constituents' whereabouts unknown is conclusive evidence that it would be impracticable to bring all plaintiffs before the court.

3. The proper class in this class action is all persons who, within three years of the filing of the complaint, purchased a bail bond from defendants or had a bail bond purchased for them from defendants and: 1) paid a fee in excess of 10% of the bond's face amount; or 2) posted collateral exceeding 10% of the bond's face amount; or 3) paid fees and posted collateral exceeding 10% of the face amount, or 4) whose bond was revoked pursuant to the statute.

4. For there to be adequate representation in a spurious class action: 1) the representatives must share common issues and interests with the unnamed class members, and 2) the representatives must vigorously prosecute the rights of the class through qualified counsel.

5. Due process does not require notice to the absent class members to a spurious class action where the court has not exercised its discretion to order that notice be given, because the rights of absent class members will not be adjudicated, and the substantive issues may be decided without notice to absent class members for the same reason.

6. The meaning of the statute limiting a bail bondsman's fee to 10% of the bond's face value is clear and unambiguous and cannot be construed to mean 10% of the bondsman's risk in an instance where his risk is greater than the face value of the bond.

7. The taking of collateral as security by a bail bondsman as part of the transaction of selling a bail bond is comprehended

by the statute limiting the charging, accepting or receiving of money or property to 10% of the face value of the bond.

8. The essence of the bail-bond contract is a private undertaking between the bondsman and the bailed defendant imposing rights and obligations running both ways; the bondsman's right to recapture and surrender the bailed defendant represents a significant factor in the bondsman's undertaking, and, on balance, is not violative of due process.

Affirmed in part, reversed in part and remanded.

M. F. CAVANAGH, J., dissents from the holding of the majority that the bondsman's right of recapture and surrender is essentially a private right not violative of due process. On this issue, he would hold that, sifting the facts and weighing the circumstances, with emphasis on the furnishing of services or exercise of power traditionally associated with the sovereign, the existence of a symbiotic relationship between the state and the private party and the overt or covert approval of the practice by the state, the power of rearrest of bailed defendants by bail bondsmen constitutes state action and is violative of the 14th Amendment Due Process Clause. He would enjoin the use of the rearrest powers of the bail bondsmen.

OPINION OF M. F. CAVANAGH, J.

1. PARTIES — CLASS ACTION — SPURIOUS CLASS ACTION.

A "spurious" class action may be maintained if the class members' rights sought to be enforced are several and there is a common question of law or fact affecting the several rights and a common relief is sought, the persons claimed to be a class are so numerous as to make it impractical to bring them all before the court and the persons who claim to represent the class will fairly insure its adequate representation (GCR 1963, 208.1[3]).

2. PARTIES — CLASS ACTION — NUMEROUSNESS OF CLASS.

A potential class of 35,000 Michigan criminal defendants who secured release on bail bonds is sufficiently numerous to make a class action appropriate and the likelihood that this group will prove unstable and its constituents' whereabouts unknown is conclusive evidence that it would be impracticable to bring all plaintiffs before the court.

3. LIMITATION OF ACTIONS — INJURIES TO PERSONS OR PROPERTY — STATUTES — CONSTITUTIONAL LAW — DUE PROCESS.

An allegation that the statute permitting summary bond revocation and rearrest of criminal defendants results in an unconstitutional deprivation of due process is an allegation of injury to persons or property and is governed by the three-year statute of limitations (MCL 600.5805[7]; MSA 27A.5805[7]).

4. LIMITATION OF ACTIONS — STATUTES — RIGHTS OF "PERSONS" — BAIL BONDS.

A statutory right to be charged no more than ten percent of the face amount for a bail bond is a right accruing to a person by reason of his being a "person" in the eyes of the law as distinguished from a right accruing to an individual by reason of some peculiar status or by virtue of an interest created by contract or property, and to suits for infringement of that right the three-year statute of limitations applies (MCL 600.5805[7]; MSA 27A.5805[7]).

5. LIMITATION OF ACTIONS — INJURIES TO PERSONS OR PROPERTY — STATUTES — STATUTORY RIGHTS — CONSTITUTIONAL RIGHTS.

The appropriate statute of limitations for actions claiming either a statutory overcharge or denial of a constitutional right is the three-year statute applicable to claims for damages for injuries to persons or property.

6. APPEAL AND ERROR — FINDINGS OF FACT.

Findings of fact made by a trial court will not be set aside unless clearly erroneous.

7. PARTIES — CLASS ACTIONS — SPURIOUS ACTION — ADEQUATE REPRESENTATION.

A court focuses on two general requirements with reference to adequate representation in a spurious class action: (1) the representatives must share common issues and interests with the unnamed class members, and (2) the court must be assured that the representatives will vigorously prosecute the rights of the class through qualified counsel.

8. CONSTITUTIONAL LAW — DUE PROCESS — NOTICE — SPURIOUS CLASS ACTION.

Due process does not require notice to the absent class members in a spurious class action where the court has not exercised its discretion to order that notice be given, because the rights of absent class members will not be adjudicated, and the substantive issues may be decided without notice to the absent class members for the same reason.

9. PARTIES — CLASS ACTIONS — SPURIOUS CLASS ACTIONS — ADEQUACY OF REPRESENTATION.

The mere allegation of a defense to a claim of a named party to a spurious class action does not render that party an inadequate representative.

10. STATUTES — STATUTORY CONSTRUCTION — BAIL BONDSMAN'S FEE.

A statute speaks for itself where its meaning is clear and unambiguous; the meaning of the statute limiting a bail bondsman's fee to 10% of the bond's face value is clear and unambiguous and cannot be construed to mean 10% of the bondsman's risk in an instance where his risk is greater than the face value of the bond (MCL 750.167b[3]; MSA 28.364[2][3]).

11. STATUTES — STATUTORY CONSTRUCTION — BAIL BONDSMAN'S FEE.

The taking of collateral as security by a bail bondsman as part of the transaction of selling a bail bond is comprehended by the statute limiting the charging, accepting or receiving of money or property to 10% of the face value of the bond.

12. CONSTITUTIONAL LAW — STATE ACTION — DUE PROCESS — BAIL BONDSMAN'S REARREST POWERS.

*Finding state action in what otherwise appears to be purely private conduct requires the sifting of facts and weighing of circumstances, with emphasis on the furnishing of services or exercise of power traditionally associated with the sovereign, the existence of a symbiotic relationship between the state and the private party and the overt or covert approval of the practice by the state; the powers of rearrest of principals by bail bondsmen constitute state action for purposes of the 14th Amendment.*

13. CONSTITUTIONAL LAW — STATUTES — DUE PROCESS — BAIL BONDSMAN'S REARREST POWERS.

*The liberty interest of a person released on bail significantly outweighs the state's interest in the current alternative rearrest method provided to professional bondsmen and the statute granting bail bondsmen the power to summarily rearrest their principals fails to meet the due process requirements of the 14th Amendment (US Const, Am XIV, MCL 765.26; MSA 28.913).*

14. INJUNCTION — CRIMINAL CONDUCT — EQUITY.

Equity has jurisdiction to enjoin criminal conduct where the conduct threatens injury to property or person.

OPINION OF V. J. BRENNAN, J.

15. BAIL — PRIVATE NATURE OF BAIL — BONDSMAN'S RIGHT OF REARREST — DUE PROCESS.

The essence of the bail-bond contract is a private undertaking between the bondsman and the bailed defendant imposing rights and obligations running both ways; the bondsman's right

to recapture and surrender the bailed defendant represents a significant factor in the bondsman's undertaking, and, on balance, is not violative of due process.

*Kelman, Loria, Downing, Schneider & Simpson* (by *Robert W. Howes),* and *Peter Dodge,* for plaintiffs.

*Norman L. Zemke,* for defendants Goldfarb.

Before: D. E. Holbrook, P.J., and V. J. Brennan and M. F. Cavanagh, JJ.

M. F. Cavanagh, J. Plaintiffs, Citizens for Pre-Trial Justice, an unincorporated, nonprofit association located in Wayne County, and five named individuals, filed a class action in November, 1974, to challenge the legality of the business practices of defendants-appellants Goldfarb and defendant Mitchell, owners of bail bond agencies.[1] Specifically, the plaintiffs alleged that defendants violated MCL 750.167b(3); MSA 28.364(2)(3) by charging a fee greater than the statutory 10% maximum and by requiring collateral security which, either taken alone or with the fee, exceeded the 10% limit. They further alleged that the provision in MCL 765.26; MSA 28.913 allowing bondsmen to unilaterally revoke the bail bond and rearrest the principal unconstitutionally deprived such individuals of liberty without due process of law. The named plaintiffs also set forth facts to show their interest in the suit and the adequacy of their representation of the proposed class. As relief, the plaintiffs requested declaratory judgment on the

[1] Plaintiffs sued Charles and Irwin Goldfarb, d/b/a Goldfarb Bonding Agency, and Carman A. Mitchell, d/b/a Carman Mitchell Bail Bonds Agency, as defendants. Defendant Mitchell died while this action was pending and has not joined in this appeal.

merits, entry of a permanent injunction to prevent further overcharges and revocations, and damages.

After hearing argument on all issues raised in the complaint and by motion,[2] the trial court subsequently prepared and entered an opinion and order. This order (1) allowed the intervention and substitution of four individuals for the originally named plaintiffs; (2) defined and certified the class,[3] holding that a class action was appropriate under GCR 1963, 208.1(3) in that the potential plaintiffs were numerous, the four named individuals were proper parties and adequately represented the absent class members' interests, and there were "common question[s] of law" presented and a common relief requested; and (3) preliminarily enjoined defendants from either overcharging or summarily rearresting a principal in connection with a bail bond posted in a Michigan criminal

---

[2] The procedural history of this litigation is complex. For the purposes of this appeal, the most crucial aspects to be considered involve plaintiffs' motions to intervene filed on behalf of four other individuals to substitute as named plaintiffs, to define and certify the class, and for accelerated and summary judgment. In addition to opposing these motions, defendants also moved for accelerated and summary judgment. The various details of this history of this action will be more fully examined as they become pertinent in the discussion of the issues raised on appeal.

[3] The trial court defined the proper class as follows:

"A. All those who purchased a bail bond from the defendant within six years from the date of filing of complaint herein or paid fees or posted collateral totaling more than ten (10%) per cent of the face value of the bond written.

"B. All those for whom the defendant posted bond in return for fees and collateral in excess of ten (10%) per cent of the face value of the bond posted within six years from the date of filing of the complaint herein.

"C. All individuals who purchased a bail bond and who paid fees or posted collateral totaling more than ten (10%) per cent of the face value of the bond written subsequent to the filing of the bill of complaint.

"D. All individuals who purchased bonds and had them revoked under the revocation statute." Order of the court filed November 21, 1975.

case.[4] Defendants have appealed from these findings and the entry of this order.

## The Class Action Issue

In addition to contesting the merits of the court's decision, defendants argue the inappropriateness of permitting the plaintiffs to pursue this suit as a class action. A brief explanation of the characteristics of a class action brought under GCR 1963, 208.1(3) is therefore warranted to provide an appropriate framework for discussion of the issues defendants raise.

GCR 1963, 208.1(3) provides:

"If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, 1 or more, as will fairly insure the adequate representation of all may on behalf of all sue or be sued when the character of the right sought to be enforced for or against the class is * * * several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

The type of action authorized by the rule is commonly known as a "spurious class action". By its terms, which have been elaborated upon in case law, the rule sets out several criteria to test the appropriateness of allowing a particular suit to proceed as a class action. (1) *The number of plaintiffs holding similar claims against a defendant.* Where this number is so large that it is impracticable to bring each claim individually, "at least one named plaintiff may represent the class before

---

[4] The original order of November 21, 1975, did not enjoin defendants from revoking the bonds and rearresting their principals according to MCL 765.2; MSA 28.913, although it did declare the statute unconstitutional. The court acknowledged this omission as an oversight, and filed a supplemental opinion November 24, 1975, extending the injunction to prohibit this practice.

the court and * * * litigate issues common to the claims against the defendant". *Northview Construction Co v St Clair Shores (On Rehearing)*, 399 Mich 184, 200; 249 NW2d 290 (1976). In this guise, the rule acts as a permissive joinder device. *Paley v Coca Cola Co*, 389 Mich 583, 607; 209 NW2d 232 (1973). (2) *Adequacy of representation.* This criterion is two-pronged. The representatives first must share common issues and interests with the absent class members, by an interest in a claim that is typical of the remaining class claims. Although the claims need not be identical in all respects, (*e.g.,* in the amount of individual damages) it must be typical in the sense that it is based on a "common question of law or fact * * * and a common relief is sought". *Northview, supra,* p 202, GCR 1963, 208.1(3). The representatives must also "vigorously prosecute the rights of the class through qualified counsel", *Northview, supra,* p 202, to meet the second prong of the adequacy of representation test. As will be elaborated upon below, although these criteria are not always given equal weight, they must both be satisfied for a class action to proceed.

*Appropriateness as a Class Action—Numerousness*

Defendants argue that plaintiffs have failed to show that the class members "are so numerous as to make it impracticable to bring them all before the court". GCR 1963, 208.1. Hence, contend defendants, this cause should not be allowed to proceed as a class action.

This argument notwithstanding, defendants estimate the potential number of class members to be 35,000.[5] This alone could persuade us that a class

---

[5] Defendants' brief, p 11.

action is appropriate here. In addition, we note the likelihood that this group will prove unstable and its constituents' whereabouts unknown. This is further and conclusive evidence that it would be impracticable to bring all plaintiffs before the court. See *Pressley v Wayne County Sheriff*, 30 Mich App 300, 319; 186 NW2d 412 (1971). There is no merit in this issue.

### Definition of the Class and Statute of Limitations

Defendants timely raised the affirmative defense of the statute of limitations. See GCR 1963, 111.7. During proceedings in the lower court this issue was subsumed in the controversy over the proper definition of the plaintiff class. Plaintiffs contended that the class should be defined to include all those whose claims accrued within the six years preceding the complaint's filing. Defendants responded that some of those persons' claims were time-barred by one or another statute of limitations. The lower court ruled in plaintiffs' favor and certified a class encompassing all those whose claims arose within six years before the complaint was filed. Defendants now challenge that ruling.

Plaintiffs' argument is in the alternative: their claims are governed either by the six-year contract statute of limitations, MCL · 600.5807(8); MSA 27A.5807(8), or by the general six-year statute of limitations for personal actions for which no provision is made by other statute, MCL 600.5813; MSA 27A.5813.

Defendants argue that the appropriate statute of limitations for the claims of statutory overcharge is the three-year statute for "actions to recover damages for injuries to persons and property". MCL 600.5805(7); MSA 27A.5805(7). Defendants further assert that the count based on unlawful

arrest amounts to allegations of assault, battery and false imprisonment, to which a two-year statute of limitations applies. MCL 600.5805(1); MSA 27A.5805(1).

Because the three counts joined in this complaint are all different, I will consider them separately.

Initially, I reject defendants' argument that the two-year statute for assault, battery and false imprisonment applies to the count alleging the unconstitutionality of the summary bond revocation permitted in MCL 765.26; MSA 28.913. Plaintiffs' complaint alleges a deprivation of due process by a statutory scheme which permits deprivation of liberty without notice and a hearing, and for arbitrary and capricious reasons. This injury is neither an assault, nor a battery, nor a false imprisonment, but the invasion of one or more constitutional rights. Since there is no statute of limitations directed explicitly to suits for denial of due process, the appropriate statute must be either the three-year statute on actions for injuries to persons or property, MCL 600.5805(7); MSA 27A.5805(7), or, if this is inapplicable, the general six-year statute for all other personal actions for which no provision is elsewhere made. MCL 600.5813; MSA 27A.5813.

Other cases have considered the scope of "actions * * * for injuries to persons and property" as used in MCL 600.5805(7); MSA 27A.5805(7). In *Stringer v Board of Trustees of Edward W Sparrow Hospital,* 62 Mich App 696; 233 NW2d 698 (1975), *lv den,* 395 Mich 768 (1975), the Court rejected an argument that "injuries to persons" comprises only physical injuries. The Court adopted a foreign jurisdiction's construction of the phrase, under which were included:

"* * *actions brought for injuries resulting from invasions of rights that inhere in man as a rational being, that is, rights to which one is entitled by reason of being a person in the eyes of the law. Such rights, of course, are to be distinguished from those which accrue to an individual by reason of some peculiar status or by virtue of an interest created by contract or property." 62 Mich App 696, 701. (Citation omitted.)

*Stringer,* therefore, held that "injuries to persons and property" included an action for injuries "to one's good name and to advancement in one's chosen profession". 62 Mich App 696, 702.

Where Federal law specifies no statute of limitations for a Federal cause of action, the courts look to the most analogous state statute of limitations. See Note: *A Limitation on Actions for Deprivation of Federal Rights,* 68 Colum L Rev 763 (1968). *Stringer* found some support for its holding in such Federal cases. 62 Mich App 696, 701. Accord, *Glowacki v Motor Wheel Corp,* 67 Mich App 448, 459-460; 241 NW2d 240 (1976). I, too, have considered them and have found one case in particular to be helpful.

In *Gordon v City of Warren,* 415 F Supp 556 (ED Mich, 1976), the court considered the issue of which statute of limitations applied to a three-count action for damages with claims predicated on 42 USC 1983, 1985, the Fourteenth Amendment, and malicious prosecution.

As to the civil rights act count, the court examined at some length the various Federal circuits' divergent approaches to this question, and concluded:

"It is clear from both *Krum*[6] and *Madison*[7] that the

---

[6] *Krum v Sheppard,* 255 F Supp 994 (WD Mich, 1966), aff'd, 407 F2d 490 (CA 6, 1967).

[7] *Madison v Wood,* 410 F2d 564 (CA 6, 1969).

Sixth Circuit interprets the above-stated Michigan statute [the three-year statute of MCL 600.5805(7); MSA 27A.5805(7)] broadly to include much more than mere physical injuries to persons and more than an injury to specific property. The Court of Appeals therein established the rule that *a wrong alleged under the Civil Rights Act is a* constitutional wrong, *and that such a wrong is personal in nature.* Therefore, at least with regard to such causes of action originating in Michigan, the Sixth Circuit has decided to abandon the Third Circuit approach of looking at the underlying wrongful act and will characterize all Civil Rights Act causes as 'injuries to the person,' applying the state statute of limitations most analogous to such characterization." 415 F Supp, 556, 560. (Emphasis changed, footnotes added.) Accord, *Equal Employment Opportunity Comm v Detroit Edison Co,* 515 F2d 301, 315 (CA 6, 1975).

If a constitutional wrong is an injury to the person, then the denial of due process alleged in the instant case would be within the three-year statute of limitations. The *Gordon* court considered the Fourteenth Amendment count stated in that case and, albeit with apparent reluctance, reached the same conclusion:

"Plaintiffs, however, have also incorporated in their complaint a count premised on a Fourteenth Amendment due process violation through the federal question jurisdictional statute, 28 USC § 1331. * * *

"Although the Sixth Circuit in *Foster v. City of Detroit,* 405 F2d 138 (1968), conditionally accepted the city's argument that the Michigan three-year statute applied to such 'federal question' suits, it found a continuing wrong which eliminated the need to make an ultimate holding on the limitations question.

"This Court, however, must make such a determination. Unfortunately it knows of no decision which provides guidance on this question.

"In the context of this complaint, wherein a Fourteenth Amendment 'federal question' is juxtaposed with

§ 1983 and § 1985 actions where all three counts are premised on the same underlying facts, this Court believes it would be inconsistent to apply a statute of limitations for the first count different from that applied to the latter two counts. This is particularly so in this situation wherein the 1983 and 1985 actions derive from the alleged Fourteenth Amendment due process violation. The Court, therefore, will also apply the Michigan three-year statute of limitations to Count I." 415 F Supp 556, 561.

The quoted language carefully limits the holding to the case where the plaintiff also pleads a civil rights act count. Nevertheless, there is no argument to support a conclusion that a different statute of limitations would otherwise apply. Moreover, given the "constitutional wrong" analysis upon which decision of the civil rights act question was based, one would certainly expect the decisions of this and the due process issue to be consistent. Accordingly, on the strength of *Stringer, supra,* and *Gordon, supra,* I would hold that the three-year statute of limitations, MCL 600.5805(7); MSA 27A.5805(7), applies to this civil action for denial of due process.

Turning to the claim of statutory overcharge, I must reject plaintiffs' argument that the six-year statute of limitations for contract actions applies. MCL 600.5807(8); MSA 27A.5807(8). Plaintiffs premise this argument upon the rule that statutes in force at the time a contract is entered become part of the contract. *State Highway Comm v Detroit City Controller,* 331 Mich 337, 352; 49 NW2d 318 (1951). Thus, runs the argument, the statute setting the maximum fee which can be charged for a bail bond (MCL 750.167b[3]; MSA 28.364[2][3]) was a part of the contract. Therefore, plaintiffs conclude, a suit for damages incurred when defen-

dants violated the statute is governed by the contracts statute of limitations.

However, in the recent case of *Huhtala v Travelers Ins Co*, 401 Mich 118, 126-127; 257 NW2d 640 (1977), the Supreme Court made it quite clear that the contracts statute of limitations does not apply unless the action is for breach of an express promise:

"Where the nature and origin of an action to recover damages for injury to persons or property is a duty imposed by law, this Court has held that it cannot be maintained on a contract theory when commenced beyond the three-year period. *Coates v Milner Hotels, Inc,* 311 Mich 233; 18 NW2d 389 (1945), *Baatz v Smith,* 361 Mich 68; 104 NW2d 787 (1960), *State Mutual Cyclone Ins Co v O & A Electric Cooperative,* 381 Mich 318; 161 NW2d 573 (1968). Those cases do not control where the action is for breach of an express promise."

The question here is, therefore, whether plaintiffs' claim is for injury to persons or property. If answered in the affirmative, the three-year statute applies, and the form of the action becomes irrelevant:

"* * *it makes no difference what form of action the plaintiff institutes in seeking recovery for damages to property or person, but in all cases such action comes within the 3-year limitation rule."

*State Mutual Cyclone Ins Co v O & A Electric Cooperative,* 381 Mich 318, 324-325; 161 NW2d 573 (1968). Accord, *Parish v B F Goodrich Co,* 395 Mich 271, 280; 235 NW2d 570 (1975). If the injuries are not to persons or property, then the only statute applicable would be MCL 600.5813; MSA 27A.5813, which provides a six-year period for all actions "unless a different period is stated in the statutes".

Again I turn to the test proposed in *Stringer, supra.* Surely a statutory right to be charged no more than ten percent of face value for a bail bond is a right "to which one is entitled by reason of being a person in the eyes of the law", a right "distinguished from those which accrue to an individual by reason of some peculiar status or by virtue of an interest created by contract or property". 62 Mich App 696, 701. Hence, the correct statute of limitations would seem to be the three-year statute of MCL 600.5805(7); MSA 27A.5805(7).

Some cases have applied the general six-year statute to actions for pecuniary loss. See, *e.g., Borman's, Inc v Lake State Development Co,* 60 Mich App 175, 187-189; 230 NW2d 363 (1975), *George v Petoskey,* 55 Mich App 433, 437; 223 NW2d 6 (1974), *Schenburn v Lehner Associates, Inc,* 22 Mich App 534, 538; 177 NW2d 699 (1970). However, the damages sustained in those cases appear to be principally loss of future financial expectations, particularly where such loss was incurred through the defendant's alleged fraud. The damages in the case at bar were immediate, and there is no allegation of fraud. I conclude that the appropriate statute here is MCL 600.5805(7); MSA 27A.5805(7).

Finally, I consider plaintiffs' count for "Unconstitutional Delegation of Authority and Denial of Equal Protection". The substance of this count is that defendants violated MCL 750.167b(3); MSA 28.364(2)(3) by requiring the posting of security over and above the statutorily allowed fee. Apparently anticipating that the statute would be construed to permit this practice, it is also alleged in this count that such a construction would unconstitutionally delegate the judicial prerogative of setting bail. In addition, it would violate criminal

defendants' rights to equal protection by conferring unfettered discretion on bondsmen to determine whether defendants may be bailed. Thus, plaintiffs have pled this single count in the alternative, alleging a violation of either statutory or constitutional rights. However, this complexity is immaterial for purposes of the statute of limitations. I have already concluded that a claim based on statutory overcharge and a claim based on a denial of a constitutional right are both subject to a three-year limitations period. One of these must be the correct construction of this count, and the three-year statute therefore also applies here.

Because the appropriate statute of limitations is three, rather than six years for each of the counts in plaintiffs' complaint, the description of the class certified must be amended to limit membership to those with claims accruing within three years preceding the filing of plaintiffs' complaint.

## Ambiguity in the Court's Order Defining the Class

Defendants object that the description of the class includes all persons who purchased a bond from defendants within six years preceding the filing of the complaint, regardless of whether they paid fees or posted collateral which, separately or combined, exceeded 10% of the bond.[8] Defendants also protest the inclusion of all individuals who purchased bonds and had them revoked pursuant to the statute, without regard for when the revocation occurred.

Plaintiffs concede that the class as presently defined is overbroad, and offer to stipulate to its redefinition.

All parties seem agreed that the court meant to

[8] See note 3, *supra*.

include only those who were charged excessive premiums or collateral, or for whose bonds excessive premiums or collateral were charged, or whose bond was revoked under the statute. The parties further agree that it was the court's intent to limit the class to those with claims not barred by the statute of limitations. Having found the appropriate statute of limitations to be three rather than six years, I believe the ambiguities in the lower court's order are clarified by redefining the class as follows:

The class consists of all person in group "A", all persons in group "B", all persons in group "C", and all persons in group "D".

Group "A" includes all those who, within three years prior to the complaint's filing, or subsequent thereto, purchased a bond from defendants and did one of the following:

(1) paid fees exceeding 10% of the bond's face value; or

(2) posted collateral exceeding 10% of the bond's face value; or

(3) paid fees and posted collateral which together exceeded 10% of the bond's face value.

Group "B" includes all persons for whom a bond was purchased from defendants within three years prior to the filing of the complaint, or subsequent thereto, and for which purchase defendants charged as in "A" (1), (2), or (3).

Group "C" includes all persons who purchased a bond from defendants which bond was revoked pursuant to MCL 765.26; MSA 28.913 within three years prior to the complaint's filing, or subsequent thereto.

Group "D" includes all persons for whom a bond was purchased from defendants and which bond was revoked as in "C".

*Standing of the Representatives and Adequacy of
their Representation*

By order dated November 21, 1975, the court determined that the proper parties to represent the plaintiff class would be Barbara Cartwright, Charles Holt, and Edward Attee.[9] Defendants contend that, with the exception of Charles Holt, these are not proper parties to prosecute this suit. Defendants further contend that the representation afforded absent class members by those persons who are proper plaintiffs is inadequate, and that therefore this suit should not be allowed to proceed as a class action. I will consider these contentions seriatim.

Defendants argue that Barbara Cartwright, a named plaintiff on count I (alleging a statutory overcharge by excessive bond premiums) and count II (alleging a similar violation by retention of collateral security), is not a real party in interest. GCR 1963, 201.2, MCL 600.2041; MSA 27A.2041. Defendants point to Ms. Cartwright's affidavit, in which she stated that she was acting on behalf of Citizens for Pre-trial Justice when she purchased the bond and posted the security. On the force of this statement defendants would conclude that Citizens, rather than Ms. Cartwright, is the real party in interest on these claims.

However, defense counsel cross-examined Ms. Cartwright on this subject at her deposition, and her testimony there is enlightening. She stated that she personally, and not Citizens, had purchased the bond and posted the security. Both the bond premium and the collateral had come from her own funds. She had signed indemnity con-

---

[9] The court's order also included one William Jones, who has since settled with defendants and is no longer a party to this suit.

tracts in her own name and believed that she would be responsible for any loss the bonding company incurred. She had not represented that she was acting on behalf of Citizens.

I am persuaded that this testimony and the statements in the affidavit raised a question of fact for the trial court as to whether Ms. Cartwright was a real party in interest. The court found that she was. This finding is not clearly erroneous, and, therefore, will not be set aside. See *Moscone v Mitoff,* 33 Mich App 259; 189 NW2d 763 (1971), *lv den,* 385 Mich 781 (1971).

Defendants apparently concede that Charles Holt is a proper representative of the claim stated in count III, unconstitutional bond revocation procedures.

Edward Attee, complaining that defendants had demanded premiums and collateral security exceeding the maximum amount permitted by law (counts I and II of the complaint), was permitted to intervene as a plaintiff. The bond was purchased and the collateral was delivered in Michigan. However, the bond was posted in New York to procure Mr. Attee's release from New York authorities who were holding him in connection with proceedings in that state.

Defendants now assert that Attee is not a proper plaintiff. They contend that allowing this suit to proceed to judgment on claims, such as Attee's, which involve incarceration in another state would threaten an unconstitutional interference with interstate commerce. Defendants remind this Court that the lower court limited its preliminary injunction relief to transactions entered into in Michigan criminal cases. They would infer from this limitation that the trial court has accepted their argument regarding interstate commerce and, hence, that Mr. Attee is not a proper plaintiff.

I interpret the record differently. Defendants opposed Mr. Attee's intervention with the interstate commerce argument. This opposition notwithstanding, the court permitted Mr. Attee to intervene as a party plaintiff and specifically determined that he would be a proper person to represent the class. I conclude that the lower court has rejected defendant's argument. Furthermore, defendants have not supported their argument with any citation of authority. On this record there is no basis for finding that the lower court erred.

In summary, the court has not been shown to have erred in naming Ms. Cartwright and Mr. Attee as representatives of plaintiffs' claims in counts I and II of the complaint. It is not contested that Mr. Holt is a proper representative of the claim stated in count III. Therefore, there is at least one named representative for each of the stated counts. I will now consider defendants' challenges to the adequacy of their representation.

Defendants assert that the named representatives are without the financial ability to carry on this suit, and argue that the representatives must be willing and able to give absent class members actual notice of this action's pendency.

The qualifications for an adequate representative were stated in *Northview Construction Co v St Clair Shores, (On Rehearing)*, 399 Mich 184, 201; 249 NW2d 290 (1976):

"With reference to spurious class action the courts focus on two general requirements. 'First, the representatives must share common issues and interests with the unnamed class members. Second, the court must be assured that the representatives will vigorously prosecute the rights of the class through qualified counsel.' " (Footnote and citations omitted.)

An allegation that the representatives are financially unable to pursue the action raises an issue as to whether they "will vigorously prosecute the rights of the class". The named representatives here have not alleged and proven their financial resources and those resources' adequacy for the costs of this litigation. However, I know of no authority, nor have defendants cited any, holding that the representatives must make such a showing. Perhaps the question would be viewed differently if the history of the suit evidenced inadequate support by the representatives. Here, however, the record gives no indication that plaintiffs' cause suffers from insufficient funding.

Careful analysis is due defendants' argument that the representatives must give, and must bear the costs of giving, actual notice to all absent class members. In *Grigg v Michigan National Bank,* 72 Mich App 358, 368-370; 249 NW2d 701, 706 (1976), *lv gtd* 401 Mich 806 (1977), another panel of this Court held that the named plaintiff was not an adequate representative where, by her own declaration, she was unwilling to pay for notification to absent class members.

The holding in *Grigg* seems to rest on two propositions: (1) due process requires that absent class members be given notice of the action; and (2) it is the named representatives' duty to pay for the notification.

The first proposition was derived from *Grigg's* reading of *Eisen v Carlisle & Jacquelin,* 417 US 156; 94 S Ct 2140; 40 L Ed 2d 732 (1974). In *Eisen* the Supreme Court held that, in spurious class actions under FR Civ P 23(b)(3), "Rule 23(c)(2) requires that individual notice be sent to all class members who can be identified with reasonable effort". 417 US 156, 177.

*Grigg* found this holding "applicable to the old FR Civ P 23 and the new FR Civ P 23 and our own GCR 1963, 208". 72 Mich App 358, 370. Although the reasoning leading to this conclusion is not easy to understand, it seems to take the following course. *Eisen* cited *Mullane v Central Hanover Bank & Trust Co,* 339 US 306; 70 S Ct 652; 94 L Ed 865 (1950), for its holding that, "when notice is a person's due", due process requires that "[t]he means employed [for giving notice] must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it". 72 Mich App 358, 369. (Citations omitted). *Eisen* also:

"* * *referred to its decision in *Schroeder v City of New York,* 371 US 208; 83 S Ct 279; 9 L Ed 2d 255; 89 ALR 2d 1398 (1962), which as the U.S. Supreme Court pointed out was decided *prior* to the promulgation of the amended FR Civ P 23, and explained that *Mullane* required rejection of notice by publication where the names and addresses of the affected persons were available." 72 Mich App 358, 369-370. (Emphasis in original.)

Therefore, concluded *Grigg,* due process requires individual notice to all absent class members.

Unquestionably, the cited authorities require *individual* notice to the absent class members *"when notice is [those persons'] due"*. However, these authorities provide no support whatever for the conclusion that, in suits brought under GCR 1963, 208.1(3), the absent class members are due any notice at all. There is in fact nothing in *Grigg* itself to support this conclusion.

In *Eisen,* as previously observed, the Supreme Court held that individual notice was required in actions under FR Civ P 23(b)(3), and clearly cited Rule 23(c)(2) as the authority for so holding. 417

US 156, 177. The cited rule unambiguously supports this holding:

"In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

The rule further provides that those given notice, and not exercising an opportunity to opt out of the action, are bound by the judgment:

"The judgment in an action maintained as a class action under subdivision (b)(3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subdivision (c)(2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class." FR Civ P 23(c)(3).

*Eisen* explained the intent of the rule's draftsmen:

"* * *individual notice to identifiable class members is not a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23. As the Advisory Committee's Note explained, the Rule was intended to insure that the judgment, whether favorable or not, would bind all class members who did not request exclusion from the suit. * * * Accordingly, each class member who can be identified through reasonable effort must be notified that he may request exclusion from the action and thereby preserve his opportunity to press his claim separately or that he may remain in the class and perhaps participate in the management of the action." 417 US 156, 176.

The rationale of *Eisen* is, therefore, clear. The Federal rule requires that notice be given, and provides that all those given notice who do not opt

out are bound. The purpose and effect of this rule
is adjudication of nonresponding class members'
rights. For this adjudication to be valid, the rule's
notice provisions were designed to comport with
due process requirements.

By contrast, the notice provisions of the Michi-
gan court rule are discretionary:

"The court at any stage of an action under sub-rules
208.1 or 208.2 may require such security and impose
such terms as shall fairly and adequately protect the
interests of the class or association in whose behalf the
action is brought or defended. It may order that notice
be given, in such manner as it may direct, of the
pendency of the action, of a proposed settlement, of
entry of judgment, or of any other proceedings in the
action, including notice to the absent persons that they
may come and present claims and defenses if they so
desire." GCR 1963, 208.4.

This rule of course presents the possibility that
absent class members will go without notice of the
action. However, this threatens no due process
violation, because the rights of the absent and
unnotified class members are not adjudicated:

"In reviewing adequacy of representation under GCR
1963, 208.1(3) our courts should limit themselves to a
reasonable inquiry into the issue. Under a GCR 1963,
208.1(3) spurious class action, as under former FR Civ p
23 after which it was modeled, absent class members
are not normally bound by the judgment of the court
unless they affirmatively intervene in the suit. The
absent class members have the benefit of 'one way
intervention'. They may silently await the final decision
of the court. If that decision is favorable to their inter-
ests, they may then join in the class for the presenta-
tion of individual claims against the defendant. If,
conversely, the decision is not favorable to their inter-
ests, and they have not joined the class suit, they are
not legally bound by the findings of the court and are

free to take legal action against the defendant in their
individual capacity. *American Pipe & Construction Co v
Utah,* 414 US 538, 546-549; 94 S Ct 756; 38 L Ed 2d 713
(1974); *Minnesota v United States Steel Corp,* 44 FRD
559, 574-575 (D Minn, 1968). Since the absent class
members are not bound, the adequacy of representation
does not take on due process dimensions and the linch-
pin for a strict scrutiny of the issue is absent. *Dolgow v
Anderson,* 43 FRD 472, 493 (ED NY, 1968); *Oppen-
heimer v F J Young & Co,* 144 F2d 387, 390 (CA 2,
1944); *Rosen v Bergman,* 40 FRD 19 (SD NY, 1966).

"In contrast, when a court rule, such as present FR
Civ P 23(c)(2), and/or the notice served on absent class
members binds them to the class judgment, the court
should closely assess the adequacy of representation.
*Hettinger v Glass Specialty Co, Inc,* 59 FRD 286, 296
(ND Ill, 1973); Cf. *Eisen v Carlisle & Jacquelin,* 417 US
156; 94 S Ct 2140; 40 L Ed 2d 732 (1974); Kratchman,
*Class Actions in Michigan,* 53 MSBJ 175, 177 (1974)."
*Northview Construction Co v St. Clair Shores, (On
Rehearing),* 399 Mich 184, 201, fn 4; 249 NW2d 290
(1976).[10]

Therefore, I conclude that due process does not

---

[10] In *Northview* the Court of Appeals decision, 44 Mich App 614;
205 NW2d 895 (1973), was affirmed by an equally divided Supreme
Court. The quoted language is taken from the memorandum opinion
for reversal. However, the language concerns a point on which the
Court did not disagree.

Some cause for disagreement may be found in *Theisen v Dearborn,*
5 Mich App 607; 147 NW2d 720 (1967), *aff'd* 380 Mich 621; 158 NW2d
483 (1968). In *Theisen* retired city employees brought an action for
increased retirement benefits, seeking an accounting and discovery of
the city's financial records. This Court held that a prior class action
brought on behalf of the same employees, raising the same claims of
increased benefits from the same defendant and resulting in a money
judgment for plaintiffs, was *res judicata* and binding on the class. The
Supreme Court affirmed, agreeing that the decision in the prior case
was conclusive on the same issue in the second case.

Although *Theisen* seems to imply that absent class members are
bound by a spurious class action judgment, it is submitted that this
reading of the case would be overbroad. *Theisen* is silent as to
whether the absent class members in the prior case were notified as
to its pendency. However, the judgment in that case was for a specific
sum ($195,936.19), and this strongly suggests that the members of the
class were ascertained and notified, and that they presented their
claims.

require notice to the absent class members where a suit is brought under GCR 1963, 208.1(3) and where, as in the instant case, the court has not exercised its discretion to order that notice be given. There being no duty to notify the absent class members, the named plaintiffs' ability and willingness to fund notification is not a proper test of their adequacy as representatives.[11]

Defendants raise another challenge to Mr. Holt's adequacy as a representative. Defendants assert that at trial he may be unable to prove that he ever had any contractual relationship with defendants. Defendants then suggest that, should they prevail on this issue, all class members would have their actions defeated.

There is no merit in this argument. Certainly the mere allegation that there is a defense against a named plaintiff's claim should not render him an inadequate representative. As was explained above, even if the representative should lose the class members would not be bound unless they had been given notice and intervened. Even if they had intervened, the court rule specifically provides that the court "shall order entry of judgment in such form as to affect only the parties to the action and those adequately represented". GCR 1963, 208.4. The rules also give the court power to "impose such terms as shall fairly and adequately protect the interests of the class" (GCR 1963, 208.4), and, "in furtherance of convenience or to avoid prejudice", to order separate trials of separate issues.

[11] After circulation among and approval by the members of this panel, the Supreme Court issued its decision in *Grigg v Michigan National Bank,* 405 Mich 148; 274 NW2d 752 (1979). Its analysis of the necessity of notice in spurious class actions under the Michigan rules parallels the analysis of this Court in concluding that no notice to absent class members is absolutely required, given the "opt-in" nature of the class action in Michigan.

GCR 1963, 505.2. These provisions are sufficient protection against the injustice which defendants foresee.

Defendants suggest that Mr. Attee is an inadequate representative because, at the time he filed a petition to intervene, he was on release on an appeal bond posted in New York. Defendants inquire of this Court whether such a person can provide adequate representation. Defendants have given neither authority, nor argument, nor reason to doubt that he may.

Finally, in their reply brief defendants, relying on *Hansberry v Lee,* 311 US 32; 61 S Ct 115; 85 L Ed 22 (1940), contend that the named plaintiffs are not adequate representatives because their interests are in conflict with those of persons who, sometime in the future, may wish to purchase a bond and may prefer to surrender collateral in violation of the statute rather than go without the bond.

The reliance on *Hansberry* is misplaced, and the argument is meritless. The possible future purchasers whose wishes defendants would accommodate are not within the class certified by the lower court. Therefore the hypothecated conflict between those future purchasers and the named plaintiffs is not a conflict among the interests of class members which would impair the adequacy of representation.

I conclude that the representation afforded absent class members by the named plaintiffs is adequate.

### *Decision of Substantive Issues Without Notice to Absent Class Members*

Defendants next contend that the court denied

them due process of law by determining the substantive issues in this case without first ordering notice to absent members of the plaintiff class. Defendants rely on *Eisen, supra,* and *Kass v H B Shaine & Co, Inc,* 71 Mich App 101; 246 NW2d 396 (1976).

*Eisen's* inapplicability to this Michigan action under GCR 1963, 208, has been discussed at some length above. That discussion need not be repeated here.

In *Kass* it was held that, where *the lower court had exercised its discretion to order notice* to absent class members, that notice must comply with *Eisen* and *Mullane v Central Hanover Bank & Trust Co, supra;* that is, it must be individual notice to all those who, with reasonable effort, can be identified. *Kass* did not purport to rewrite GCR 1963, 208, so that it compelled notice to absent class members before decision of any substantive issues. Whether notice is ordered remains discretionary with the trial court, and, the record before us manifesting no abuse, I find no error here.

### Trial Court's Decision on the Merits; Statutory Overcharge by Excessive Premiums

This issue and the next concern the merits of plaintiffs' allegations that defendants violated MCL 750.167b(3); MSA 28.364(2)(3), which, in pertinent part, provides as follows:

"It shall be lawful to charge for executing any bond in a criminal case, but no person engaged in the bonding business, either as principal or clerk, agent or representative of another, either direct or indirectly, shall charge, accept or receive any sum of money or property, other than *the regular prevailing fee for bonding,* which *shall not exceed 10% of the face value*

*of the bond for a 12 month period or any part thereof,*
from any person for whom he has executed bond, for
any other service whatever performed in connection
with any indictment, information or charge upon which
the person is bailed or held." (Emphasis added.)

The trial court, in its opinion and order, held
that where defendant bondsmen charge, accept or
receive any money or property which has a com-
bined value greater than 10% of the face value of
the bond written, they violate the provisions of
MCL 750.167(b)(3); MSA 28.364(2)(3).

The issue here is whether the court erroneously
ruled in favor of plaintiffs with respect to count I
of their complaint, which alleged that defendants
violated the statute by charging premiums which
exceeded 10% of the bond's face value.

Defendants' argument that they did not violate
the statute is based on MCL 28.613(2); MSA
4.450(13)(2):

"(2) On and after the effective date of this act, there
shall be levied an assessment as additional cost in an
amount equal to 10% of every fine, penalty and forfeit-
ure imposed and collected by the courts for criminal
offenses, other than a fine, penalty or forfeiture for a
violation of the Michigan vehicle code or any local
ordinance relating to stopping, parking or operation of
a vehicle, and other than for a violation of the conser-
vation laws. When a fine is suspended, in whole or in
part, the assessment shall be reduced in proportion to
the suspension."

Defendants assert that the legislative intent
behind the statute limiting the bond premium to
10% of the bond's face value was to allow the
bondsman to charge 10% of his risk. When MCL
28.613(2); MSA 4.450(13)(2) was subsequently en-
acted, it raised the bondsman's risk to 110% of the

bond's face value. Thus, defendants argue, reading the statutes together, and giving effect to the Legislature's intent, a charge of 11% of the bond's face value, being 10% of 110% (the bondsman's risk), does not violate the statute.

Before considering the merits of this argument, it is important to mark its limited reach.

First, even if correct, the argument could only justify premiums of 11%. Defendants make no effort to justify the greater premiums which plaintiff alleges were charged in some cases.

Second, defendants concede that the imposition of the surcharge was terminated in Recorder's Court in 1975.

Third, and finally, in 1976 MCL 28.613(2); MSA 4.450(13)(2) was repealed. 1976 PA 422, Eff. January 11, 1977.[12]

In summary, there is no arguable legal basis for justifying 11% premiums after 1975, and there is no argument made in support of premiums greater than 11% of the bond's face value.

I turn now to the merits of the court's decision. That decision was based upon alternate grounds.

The court's first rationale was based on *People v Barber,* 14 Mich App 395; 165 NW2d 608 (1968). *Barber* held that MCL 28.613(2); MSA 4.450(13)(2) was unconstitutional. Although the issue in *Barber* was the 10% surcharge as applied to fines, the lower court herein held that *Barber* applied to bond forfeitures, as well. That is, the 10% surcharge on bond forfeitures was unconstitutional; defendants' risk was, therefore, only 10% and 11% premiums were, therefore, unlawful.

Secondly, the court held that, when the Legisla-

---

[12] Appellants' brief, pp 23-25. It is unclear from the record whether other courts continued to impose the surcharge in the wake of *People v Barber,* 14 Mich App 395; 165 NW2d 608 (1968).

ture, in wording the statute, stated: "10% of the face value of the bond", it meant precisely that, and not 10% of the bondman's risk.

In construing a statute, it is our duty to give effect to the legislative intent. *Posselius v First National Bank—Detroit,* 264 Mich 687, 689; 251 NW 429 (1933). However, to discover that intent one must first look to the plain meaning of the statute's words. *Chrysler Corp v Washington,* 52 Mich App 229, 234; 217 NW2d 66 (1974), *lv den* 399 Mich 859 (1977). Where the statute's meaning is clear and unambiguous the statute speaks for itself, and our task is at an end. *Lansing v Lansing Twp,* 356 Mich 641, 649; 97 NW2d 804 (1959). The term "face value" as applied to a bail bond is unambiguous and explicit. Its meaning may in some circumstances define a sum equal to the bondsman's risk, but this does not persuade me to depart from the term's plain meaning where these two values are unequal. The lower court did not err.

Because I agree with this second, alternative rationale, I will not consider the constitutional issue. See *Rosenbaum v Dep't of Treasury,* 77 Mich App 332, 337-338; 258 NW2d 216 (1977), *lv den* 402 Mich 826 (1977), *Mask v Shell Oil Co,* 77 Mich App 25, 32; 257 NW2d 256 (1977), *lv den* 402 Mich 835 (1977).

### Overcharge by Taking Collateral

Defendants next contend that the court also erred in determining that defendants violated the statute by taking collateral which, alone or with the premium charged, exceeded 10% of a bond's face value. Defendants maintain that the statute applies only to payments of premiums, at which time title to the property changes hands, and not

to pledges of collateral, where title is not transferred.

However, nothing in the statute's wording expresses an intent to limit it to transactions involving a transfer of title. On the contrary, the sweep of its language is broad:

"[N]o person engaged in the bonding business * * * shall charge, accept or receive any sum of money or property, other than the regular prevailing fee for bonding, which shall not exceed 10% of the face value of the bond." MCL 750.167b(3).

The trial court thoughtfully analyzed this language in light of pertinent authority and concluded that "charge, accept or receive" comprehend the transfer of property as collateral.[13] In my judgment this conclusion was correct.

*Constitutionality of MCL 765.26; MSA 28.913*

Lastly, defendants challenge the court's ruling by way of order that MCL 765.26; MSA 28.913, which establishes the procedure for a bondsman's rearrest of his bailed principal and summary revocation of the bond, is unconstitutional because it violates the provisions of the due process clauses of the state and Federal constitutions. After carefully weighing the precedents involved, I would affirm the trial court's decision.

In the court below, plaintiffs argued that the statutory procedures for arrest of a principal by a bondsman constituted a deprivation of liberty without due process of law as required by the 14th Amendment to the United States Constitution. On

---

[13] See *United States v Abercrombie,* 480 F2d 961, 964 (CA 5, 1973), *State v Alcorn,* 187 Neb 854; 194 NW2d 798 (1972), *State v Kimbrough,* 109 NJ Super 57; 262 A2d 232 (1970).

appeal, defendants argue, on the authority of *Taylor v Taintor,* 83 US (16 Wall) 366; 21 L Ed 287 (1873), and *Jackson v Metropolitan Edison Co,* 419 US 345; 95 S Ct 449; 42 L Ed 2d 477 (1974), that because the bondsman's right to arrest his principal is a private right arising from the bond contract, and is not one granted by the state, no state action exists. Thus, the conduct challenged is private, and not reached by the due process clause of the 14th Amendment.

The statute under attack provides in part:

"In all criminal cases where any person or persons have entered into any recognizance for the personal appearance of another and such bail and surety shall afterwards desire to be relieved from his responsibility, he may with or without assistance, arrest the accused and deliver him at the jail or to the sheriff of said county. In making such arrest he shall be entitled to the assistance of the sheriff, chief of police of any city or any peace officer. The sheriff or keeper of any jail in said county is authorized to receive such principal and detain him in jail until he is discharged in due course of law. Upon delivery of his principal at the jail by the surety or any officer, such surety shall be released from the conditions of his recognizance." MCL 765.26; MSA 28.913.

It is noteworthy that, by its terms, the statute does not require the surety to articulate his reasons for desiring "to be relieved of his responsibility" nor establish standards to define the circumstances in which such a desire may be justified. The statute also entitles bondsmen to the assistance of state officers in effecting the arrest.

The success of plaintiffs' Fourteenth Amendment due process claim rests upon the outcome of this Court's threshold determination concerning the existence or lack of state action, *i.e.,* that in

some significant sense, the state has involved itself in the bondsmen's actions. *Moose Lodge No 107 v Irvis,* 407 US 163, 173; 92 S Ct 1965; 32 L Ed 2d 627 (1972). Finding state action in what otherwise appears to be purely private conduct requires a reviewing court to sift facts and weigh circumstances. *Burton v Wilmington Parking Authority,* 365 US 715, 722; 81 S Ct 856; 6 L Ed 2d 45 (1961).

At the outset, I would emphasize that the mere fact that the bondsman's arrest power existed at common law does not prevent the making of such a finding. The Fourteenth Amendment makes void:

" 'State action of every kind' which is inconsistent with the guaranties therein contained, and extends to manifestations of 'State authority in the shape of laws, customs, or judicial or executive proceedings.' " *Shelley v Kraemer,* 334 US 1, 14; 68 S Ct 836; 92 L Ed 1161 (1947).

It would seem, therefore, that not the source itself of the bondsmen's power to arrest but rather the posture of the state with regard to that power is determinative of the state-action issue. For example, *Shelley v Kraemer, supra,* made it clear that state authority in the form of judicial enforcement of a common-law rule constituted state action.[14]

*Taylor v Taintor, supra,* which defendants and my brothers cite as authority for the proposition that the statute is derivative of the common law and thus, no state action exists, does not compel

[14] There is some indication from the record that the bondsman's supposed private right to surrender his principal by rearresting him and delivering him to the sheriff has been enforced by Michigan courts. *People v Ruckers,* Washtenaw Circuit Court Opinion No. 74-7580-FY, July 3, 1974, appended to plaintiffs' Brief in Support of Amended Motion for Preliminary Injunction. Although the *Shelley* decision, *supra,* provides authority for a finding of state action on this basis alone, I am reluctant, given the paucity of the record on this point, to reach the same conclusion in the instant case.

an opposite conclusion. No issue of state action
was raised in *Taylor.* The opinion's forceful lan-
guage, emphasizing the extensive nature of the
bondsman's arrest power, appears aimed at sup-
porting its conclusion that a surety cannot escape
his liability on a bail bond by claiming that his
principal's extradition from another state to a
third state put him beyond the surety's reach. By
equating a surety's claim for custody with a
state's, the Court pointedly was attempting to
discourage collusive agreements between a surety
and his principal which encouraged the latter to
flee to a foreign jurisdiction. I thus would distin-
guish *Taylor* from the instant case and do not find
it dispositive of the state action issue.[15]

The most recent Supreme Court authority on
the concept of state action as it relates to the
Fourteenth Amendment, *Jackson v Metropolitan
Edison Co, supra,* carefully delineates a "nexus"
test for determining whether private conduct is to
be considered state action with the ambit of the
Fourteenth Amendment:

"* * * the inquiry must be whether there is a suffi-
ciently close nexus between the State and the chal-
lenged action of the regulated entity [in the instant
case, of the bondsmen] so that the action of the latter
may be fairly treated as that of the State itself." 419
US 345, 351.

The *Jackson* opinion further points out that "[t]he

---

[15]Nor does *Curtis v Peerless Ins Co,* 299 F Supp 429, 435 (D Minn,
1969), persuade me to take a different view. There, the court discussed
the surety's common-law right to arrest his principal to reiterate the
rule that a surety is not liable for damages in returning the principal
to custody. The statements strike me as dicta, and I do not find them
controlling here. Indeed, the court assumes that the surety will use
reasonable means, and for a proper purpose, to achieve the arrest.
Such envisioned restrictions on the surety's power to arrest do not
appear in the case at bar, where the defendants claim the power to
arrest is plenary.

true nature of the State's involvement may not be immediately obvious, and detailed inquiry may be required in order to determine whether the test is met". *Jackson, supra,* p 351.

It is clear, first of all, that the mere fact a particular entity is heavily regulated or licensed, *Jackson, supra, Moose Lodge No 107, supra,* is not by itself sufficient for a finding of state action. Thus, state action cannot be predicated upon the fact that the State of Michigan extensively regulates the business practices of professional bondsmen. Nor can such a finding be premised on the statute's "encouragement" of the rearrest procedures. Compare *Northrip v Federal National Mortgage Association,* 372 F Supp 594 (ED Mich, 1974), with *Turner v Impala Motors,* 503 F2d 607 (CA 6, 1974). In discussing the merits of the case, however, the *Jackson* court isolated other factors which, if present, could raise the level of private conduct to state action. The court indicated that the furnishing of services or exercise of powers traditionally associated with the sovereign, the existence of a symbiotic or interdependent relationship between the state and the private party and the overt or covert approval of the practice by the state, were significant. *Jackson, supra.* See also, *Northrip, supra,* p 597.

Defendants would contend that the positions of professional bondsmen and the utility company in *Jackson* are analogous, and here, as there, no state action exists. I disagree, and find the two situations distinguishable. The utility company's activities failed to meet the criteria listed above; thus, its actions did not rise to the level of state action. Application of those same factors to the instant case, however, compel the opposite result.

First, the Court in *Jackson* found that the fur-

nishing of electricity is not traditionally associated with the state's acting in its sovereign capacity. *Jackson, supra,* pp 352-353. Here, by contrast, professional bondsmen, like defendants, exercise a power which is clearly a traditional adjunct of the state's sovereignty: the power to arrest. The bondsman's power extends far beyond the limited power to arrest granted by statute to the ordinary citizen (MCL 764.16; MSA 28.875), and is free of the procedural safeguards which carefully control civil arrest (MCL 600.6075-600.6078; MSA 27A.6075-27A.6078).

Secondly, unlike the State of Pennsylvania's attitude towards the utility's termination policies, Michigan, through action of its Legislature, has "approved" of the rearrest procedures. This "approval" may be discerned on two levels. MCL 765.26; MSA 28.913, is identical to 1929 CL 17188, which significantly altered the prior statutory scheme concerning the surrender of a bailed individual by his surety by allowing the surety to directly arrest his principal. The former statute required a surety, upon affidavit, to apply to a justice of the peace for a mittimus to be served upon the individual by a sheriff or other third party who was then authorized to make the arrest.[16] Returning the arrest power directly to the

---

[16] 1915 CL 15699 provided in part:

"In all criminal cases where any person or persons have entered into any recognizance for the personal appearance of another, and such bail and surety shall afterwards believe that his principal intends to abscond, or has absconded, such bail or surety, on application to any justice of the peace in the county in which the recognizance is taken, or in which such principal resides, and, producing evidence of his being bail or surety, and verifying the reason of his application by oath or otherwise, it shall be the duty of such justice forthwith to grant a mittimus, directed to the sheriff, his deputy, or constable, or other person of the county in which such application shall be made, commanding such officer or other person forthwith to arrest such principal, if he is to be found within this state, and bring him before such justice, that other and sufficient security may be taken, and, in

surety, thus making a significant change in a long-standing statute (one of which it must be presumed the Legislature was well aware, *People v Buckley*, 302 Mich 12, 21; 4 NW2d 448 [1942], *Lenawee County Gas & Electric Co v City of Adrian*, 209 Mich 52, 64; 176 NW 590 [1920]), must be regarded as "evidencing a purpose to change the force and effect of the existing law". *In re Loakes' Estate*, 320 Mich 674, 679; 32 NW2d 10 (1948), *Michigan Transportation Co v Secretary of State*, 41 Mich App 654, 665; 201 NW2d 83 (1972). Secondly, by the plain words of MCL 765.26; MSA 28.913, the state has entitled the bondsman to the aid of state officers in arresting the individual released on bail. "Entitle" is a strong word, and when given its ordinary and common-sense meaning, *General Motors Corp v Erves, (On Rehearing)*, 399 Mich 241, 253-254; 249 NW2d 41 (1976), would establish a claim of right in the bondsman to the assistance of state officers. Short of an express declaration, a clearer indication of state approval for the bondsman's arrest practice cannot be found.

Finally, the *Jackson* decision found no evidence of a "symbiotic" relationship between the state and the utility company to persuade the court that state action existed. *Jackson, supra,* p 357. Existence of this relationship, whether described as a symbiosis, interdependence or partnership, has long been considered significant to establish the required nexus between the state and private conduct. See, *Moose Lodge No 107*, 407 US 163, 175-177, *Reitman v Mulkey*, 387 US 369; 87 S Ct 1627;

---

failure so to do, commit him to the keeper of the common jail in said county, who is hereby authorized to receive such principal and retain him in jail until he is discharged by a due course of law."

An identical provision may be found in 1897 CL 11872, 1871 CL 7877, 1857 CL 6009, 1840 PA 98.

18 L Ed 2d 830 (1967), *Burton v Wilmington Parking Authority, supra, Wahba v New York University,* 492 F2d 96, 100 (CA 2, 1974). Such a relationship exists between professional bondsmen and the state and most strongly convinces me of the correctness of a state-action finding. Indeed, my dissenting brethren even allude to the benefit the state receives from a bondsman. The bondsman's relationship with the court is quasi-official. By arranging for the pretrial release of the accused, he relieves the state of the onus of caring for a defendant in custody, and in essence continues the original imprisonment. *Taylor v Taintor,* 83 US 366, 371. In this regard, we find most persuasive the following language from *Ouzts v Maryland National Ins Co,* 505 F2d 547, 557 (CA 9, 1974), (Hufstedler, J., dissenting):

"By permitting a defendant to be released into the custody of a private surety, the state saves the expense that it would otherwise incur in constructing additional jail facilities, feeding and clothing the prisoner, and using its own governmental personnel to guard the defendant and insure his appearance in court. In maintaining custody over a defendant, therefore, the bail bondsman is performing an important public function."

See also, Dill, *Discretion, Exchange and Social Control: Bail Bondsmen in Criminal Courts,* 9 Law and Soc Rev 639 (1975).[17]

---

[17] "The bondsman's legal powers of arrest and extradition, like his discretion in posting bail, may occasionally be put to the advantage of criminal justice officials. Bondsmen 'own' defendants for whom they post bail. Therefore, law-enforcement officials can informally borrow the bondsman's legal authority to avoid having to comply with expensive and cumbersome procedures necessary for inter-state extradition of fugitive defendants. Under this arrangement, defendants who have been arrested in another state are turned over to bondsmen for return to face original charges in the state where they jumped bail.

\* \* \*

"Some law-enforcement officials claim that the most important

For the above reasons, I conclude that sufficient nexus exists between the state and defendant bail bondsmen to find the latter's actions under that statute state action for the purposes of the Fourteenth Amendment.

Merely concluding that state action is present in the instant case, however, does not resolve the question of whether the requirements of due process in general apply to the bondsman's rearrest and surrender of an individual released on bail. This inquiry turns on whether or not "the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment". *Morrissey v Brewer,* 408 US 471, 481; 92 S Ct 2593; 33 L Ed 2d 484 (1972), *Fuentes v Shevin,* 407 US 67; 92 S Ct 1983; 32 L Ed 2d 556 (1972).

The court below found a close parallel between the liberty interest of the individual released on a bail bond and that of the parolee scrutinized by the Supreme Court in *Morrissey, supra.* I find no error in the trial court's analysis and would agree that, although the bailed accused's freedom is conditional, he enjoys the core values of liberty protected by the due process clause of the Fourteenth Amendment. The nature of the procedural safeguards to which he is entitled, however, calls for a balancing process between the liberty interest and the state's interests in rearresting a bailed defendant. *Morrissey, supra,* pp 481-483. While the present statutory system perhaps deters bail-skipping, and affords an alternative means to insure a defendant's appearance, the state primarily benefits because the bondsman's summary arrest meth-

---

service the bondsman renders to the state is in retrieving defendants who have absconded." *Dill, supra,* p 667.

ods avoid the more involved procedure required
before a prosecutor may rearrest the accused. It is
my determination, therefore, that the liberty inter-
est of a person released on bail significantly out-
weighs the state's interest in the current alterna-
tive arrest method provided to professional bonds-
men.

I recognize, of course, that both the state and
the bondsmen have an interest in assuring the
appearance of the accused for trial. In affirming
the trial court, I hold here only that the current
statute implementing this interest fails to meet
due process requirements of the Fourteenth
Amendment and is therefore unconstitutional.

Numerous United States and Michigan Supreme
Court pronouncements have provided instructive
guidelines concerning the procedure necessary
whenever Fourteenth Amendment due process in-
terests are involved. See, for example, *Morrissey v
Brewer, supra,* pp 485-488, *Fuentes v Shevin, su-
pra,* pp 96-97, *Mitchell v W T Grant Co,* 416 US
600; 94 S Ct 1895; 40 L Ed 2d 406 (1974), *Bundo v
Walled Lake,* 395 Mich 679; 238 NW2d 154 (1976).
From these cases, it is clear that, at minimum,
judicial participation prior to these occurrences
and the opportunity for a hearing is required.

I am hesitant, however, to usurp the Legisla-
ture's function by mandating a comprehensive
procedure, consistent with due process, to govern
bond revocation and rearrest. I therefore would
leave to the Legislature's wisdom and experience
the development of a system compatible with due
process and with the needs of the Michigan courts,
the individuals seeking bonds and the professional
bondsmen.

A response to the position taken by the majority
on the constitutionality of bondsman's rearrest

procedures is appropriate. My brothers, in conclud-
ing that the bondsman's right to rearrest is consti-
tutional, emphasize the private nature of the bail
bond institution and predicate the bondsman's
rearrest right on the sanctity of contract. This
focus on the nature of bail as a merely private
undertaking ignores its reality as a method of
securing the constitutional and statutory right to
bail. Const 1963, art 1, § 15, MCL 765.6; MSA
28.893, *People v Giacalone,* 16 Mich App 352, 354;
167 NW2d 871 (1969). While not absolute in all
cases, the right to bail is recognized as fundamen-
tal, and is based upon the presumption of inno-
cence that attaches to an individual prior to trial.
*In re Winship,* 397 US 358, 362; 90 S Ct 1068; 25 L
Ed 2d 368 (1970).

"This traditional right to freedom before conviction
permits the unhampered preparation of a defense, and
serves to prevent the infliction of punishment prior to
conviction. See *Hudson v. Parker,* 156 U.S. 277, 285
(1895). Unless this right to bail before trial is preserved,
the presumption of innocence, secured only after centu-
ries of struggle, would lose its meaning." *Stack v Boyle,*
342 US 1, 4; 72 S Ct 1; 96 L Ed 3 (1951).

The majority's elevation of a contractual right to
an absolute subordinates this right to the whim of
the bondsman. At the very least, the rearrest
clause in the bail bond contract impermissibly
interferes with a public policy that has been em-
bodied in every constitution of this state since
1835.

## The Injunctions

Having declared the bail-bond fee, collateral,
and revocation practices of which plaintiffs com-
plained unlawful, the court issued a preliminary

injunction against the defendants pendente lite.[18] This injunction was stayed on the court's own order for 30 days, pending action on defendants' application for leave to appeal. In this Court's order granting leave, the stay was extended until further order of this Court. Having affirmed the trial court's decision on the merits, the issue is now whether the stay should be lifted.

The purpose of a preliminary injunction, and the ground upon which it should be granted, were discussed by the Supreme Court in *Niedzialek v Journeymen Barbers, Local 552,* 331 Mich 296, 300-301; 49 NW2d 273 (1951):

"In granting or withholding injunctive relief *pendente lite* in a case of this character it is highly proper and quite essential for a court to consider whether the rights of the respective litigants will best be subserved by granting temporary injunctive relief if sought. If the personal rights or property rights involved will be best preserved by granting temporary injunctive relief in a suit presenting issues of controverted merit, such relief should be granted." (Citations omitted.)

The general standard of review was stated in

---

[18] "IT IS ORDERED that during the pendency of this action and until further order of the Court, the defendant bondsmen, their agents and employees are hereby restrained and enjoined from in any way participating in any transaction entered into in Michigan wherein property or money is received, accepted or charged in return for the posting of a bail bond in a Michigan criminal case where such property or money, whether designated as collateral security or fee, totals more than 10% of the face value of the bond written." Order, November 21, 1975.

"Counsel called attention of the Court to the Court's omission of a reference in its grant of injunctive relief to its holding that the present statutory procedures deny procedural due process. We did make such omission. We had intended to provide as to injunctive relief, injunctive relief against defendant's denial of due process in its administration of revocation procedures. Therefore, any judgment entered must provide such interim injunctive relief." Supplement to First Opinion, November 24, 1975.

*Furniture Manufacturers Ass'n of Grand Rapids v Grand Rapids Guild of Exhibitors,* 268 Mich 685, 689; 256 NW 595 (1934):

"Granting or dissolving an interlocutory injunction is discretionary with the trial court; and this court will rarely interfere with the exercise of such discretionary power and then only upon a showing of a palpable abuse thereof." (Citations omitted.)

See also *Seifert v Buhl Optical Co,* 276 Mich 692, 699; 268 NW 784 (1936).

However, although the court enjoys very broad discretion in granting or withholding injunctive relief, the plaintiff must be able to show a threatened interference with his rights. *Benton Harbor v Michigan Fuel & Light Co,* 250 Mich 614, 624; 231 NW 52 (1930). It is not sufficient that the defendants' conduct threatens third-party rights. See 42 Am Jur 2d, Injunctions, § 29, pp 764-766; 43 CJS, Injunctions, § 40, p 852.

Furthermore, in the instant case the court had ruled that defendants' fee and collateral charges violated a criminal statute. Hence, its injunction against those practices enjoined commission of a crime. With regard to such orders, the law in this jurisdiction is well settled. That the conduct enjoined is a crime is not sufficient to invoke equity's jurisdiction; there must be an allegation of injury to the plaintiff's property or person. However, where there is such an allegation, it does not defeat equity's jurisdiction that the conduct enjoined is criminal. See *Twp of Warren v Raymond,* 291 Mich 426, 428; 289 NW 201 (1939), *United-Detroit Theaters Corp v Colonial Theatrical Enterprise, Inc,* 280 Mich 425, 431; 273 NW 756 (1937), *Seifert v Buhl Optical Co, supra,* p 700, *Glover v Malloska,* 238 Mich 216, 220; 213 NW 107 (1927).

See also, *Village of Port Austin v Parsons,* 349 Mich 629, 631; 85 NW2d 120 (1957).

In the instant case there is certainly a basis for finding that the acts enjoined threaten injuries to personal or property rights. However, the rights are not those of the litigants. The class of plaintiffs includes only those persons who have already suffered the overcharges. As to these persons the injunction's protection comes too late. Because the preliminary injunction benefits only people who are not parties to the litigation, its issuance was error.

The court also enjoined defendants' summary revocation of bonds pursuant to the statute. Unlike the injunction against overcharges, this order may protect plaintiff class-members' rights. The class is not so broadly defined that it includes all persons who are free on a bond written by defendants, and hence threatened with their bond's revocation. However, it does include persons free on bonds for which they were charged too much in fees and/or collateral. Limited to the benefit of these persons the injunction is not an abuse of discretion.

In conclusion, I would affirm the trial court's decision in part, and reverse in part and remand to the lower court for proceedings not inconsistent with this opinion.

V. J. BRENNAN, J. *(concurring in part, dissenting in part).* We concur with Judge CAVANAGH's opinion except that portion holding MCL 765.26; MSA 28.913 unconstitutional.

Judge CAVANAGH bases his opinion on "a balancing process" between the liberty interests "of the bailed defendant" and the state's interest in "rearrest" and holds that the bailed defendant is enti-

tled to some due-process protections. What his opinion fails to weigh in the balance is the private nature of a bail contract and the bondsman's interest therein.

A bail-bond arrangement essentially places the principal (bailed defendant) in the custody of the surety (bail bondsman) thus imposing on the surety the obligation and responsibility to produce the principal at various court proceedings. At common law the surety had the right to surrender the principal *at any time* to the state and thus discharge the obligation. No process was ever necessary to authorize the arrest of the principal by the surety. Anno: *Surrender of principals by sureties on bail bond,* 3 ALR 180, supplemented by 73 ALR 1369. This common-law rule was expressed and given effect by the United States Supreme Court in *Taylor v Taintor,* 83 US (16 Wall) 366, 371-372; 21 L Ed 287 (1873), as follows:

"When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge, and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. * * * The seizure is not made by virtue of new process. None is needed. It is likened to the rearrest by the sheriff, of an escaping prisoner. [Citations omitted.] In Anonymous, 6 Modern [P 231] it is said: 'The bail have their principal on a string, and may pull the string whenever they please, and render him in their discharge.'"

See also *Carlson v Landon,* 342 US 524, 547; 72 S Ct 525; 96 L Ed 547 (1952), *United States v Goodwin,* 440 F2d 1152, 1156 (CA 3, 1971), *Fitzpatrick v*

*Williams*, 46 F2d 40 (CA 5, 1931), *Ex Parte Salinger*, 288 F 752 (CA 2, 1923).

This conception of the bail-bond contract has not been lost to the antiquity of the 19th century. In the recent case of *Allied Fidelity Corp v Comm of Internal Revenue*, 572 F2d 1190, 1193 (CA 7, 1978), the court cited *Taylor, supra*, for the broad powers of a surety on a bail contract and further pointed out that although an accused may be at large due to bail, "in contemplation of law he (the accused) remain[s] in custody".

In *Outzs v Maryland National Ins Co*, 505 F2d 547, 551 (CA 9, 1974), the court quoted with approval the following from *Fitzpatrick v Williams, supra:*

"The right of the surety to recapture his principal is not a matter of criminal procedure, but arises from the private undertaking implied in the furnishing of the bond. * * * It is equally true that the surety, if he has the right, is not required to resort to legal process to detain his principal for the purpose of making surrender."

The statute under attack in the present case represents the State of Michigan's return to the common-law rights and liabilities on a bail-bond contract. The essence of the bail-bond contract is a private undertaking between the bondsman and the bailed defendant imposing rights and obligations running both ways. The bondsman's right to recapture and surrender the bailed defendant represents a significant factor in the bondsman's undertaking. The bondsman's authority to surrender does not directly affect the bailed defendant's right to bail since the latter is still free to post bond or to employ another surety for that purpose. We are not unmindful that economic realities may pre-

clude the surrendered defendant from posting his own bond, but that factor does not warrant the abrogation of the surety's rights on the private contract.

It is noted that the surety's function on the bail-bond contract operates to relieve the state from policing court attendance of bailed defendants and thus furthers the state's interests. In addition, state regulation of bail-bond practices protects against abuses of the system. In balancing the interests of the various parties, taking into account the minimal effect of surrender on the bailed defendant's right to bail, we find the surety's right to surrender not offensive to due process. We hold MCL 765.26; MSA 28.913 constitutional and do not enjoin its employment.

D. E. HOLBROOK, P.J. concurs.