PEOPLE v EVANS

Docket No. 83297. Argued March 7, 1989 (Calendar No. 5). Decided April 3, 1990.

Pearl L. Evans failed to appear for habitual offender proceedings in the Bay Circuit Court while free on a $15,000 surety bond posted by Edward Kosciuszko and Katherine Kosciuszko, doing business as Kozy Bail Bond. The court, John X. Theiler, J., ordered revocation and forfeiture of the bond, but agreed to stay execution of the judgment of forfeiture for sixty days to enable Kozy to locate Evans. Through the efforts of Kozy, Evans was apprehended and returned to custody within the sixty-day period. Kozy made no effort to secure remission of the forfeited bond until the following year, when it moved to set aside the forfeiture and judgment, arguing that it was entitled to remission of the forfeited bond because it had produced Evans within the sixty-day period and, in the alternative, because it had satisfied the requirements for remission of forfeited bonds under MCL 765.15; MSA 28.902. The court entered an amended judgment against the surety, but allowed it to set off $6,500 for its expenses in locating and returning Evans to custody. The Court of Appeals, BEASLEY, P.J., and HOOD and R. L. TAHVONEN, JJ., reversed in an opinion per curiam, holding that the trial judge should have remitted Kozy's bond under § 15 (Docket No. 99545). The Court of Appeals certified that its decision was in conflict with *People v Johnson,* 72 Mich App 702 (1976). The people appeal.

In an opinion by Justice BOYLE, joined by Chief Justice RILEY and Justices BRICKLEY, CAVANAGH, ARCHER, and GRIFFIN, the Supreme Court *held:*

The forfeiture set-aside provision of MCL 765.15(a); MSA 28.902(a) does not apply in cases where a surety bond has been posted for a defendant's release. Rather, its application is limited to cases in which the defendant's release was obtained by the deposit of cash, a check, or certain securities with the trial court, pursuant to MCL 765.12; MSA 28.899, in lieu of a

· REFERENCES

Am Jur 2d, Bail and Recognizance §§ 90, 170, 171.
See the Index to Annotations under Bail and Recognizance.

surety bond. Where a surety bond has been posted, no such deposit exists.

1. Section 15 originally was enacted along with §§ 12 through 18 of Chapter V of the Code of Criminal Procedure, and is to be read in pari materia. The sections are exclusively concerned . with cash, checks, or securities that have been deposited with a court. While a surety bond is executed with the court in exchange for a defendant's release, it is not "deposited" with the court in the sense that something needs to be returned to the surety. Prior to the addition of the set-aside provision, § 15 was intended to apply only where cash, checks, or securities had been deposited with the court.

2. Generally, an amendment of a statute is considered a part of the original act, and the entire act as amended is to be construed as if the amendment were a part of the original. To conclude that § 15 was ever intended to apply in cases where cash, checks, or securities were not actually placed on deposit with the court exalts form over substance and completely fails to recognize the limited application of, and the relationship among, §§ 12 through 18. Absent any indication to the contrary, it must be assumed that the amendment of § 15(a) which inserted the set-aside provision was intended to be as limited in scope as those sections of which it became a part.

Reversed.

Justice LEVIN, dissenting, stated that the forfeiture set-aside provision of MCL 765.15(a); MSA 28.902(a) should apply to all forfeitures of bonds or bail, including that provided by a commercial surety or an individual surety, such as a friend or relative of a defendant. Chapter V of the Code of Criminal Procedure generally applies to bail without regard to whether the security for the defendant's appearance is a surety bond or other collateral. The conclusion of the majority that the forfeiture set-aside provision was intended to apply only to bail or bonds provided by the deposit of cash, checks, or government securities, and not to include a surety or other bond, or to so distinguish between such forms of collateral, has not been justified.

168 Mich App 654; 425 NW2d 209 (1988) reversed.

BAIL — SURETY BONDS — FORFEITURE.

The provision for the setting aside of a forfeiture of a surety bond in the Code of Criminal Procedure does not apply in cases where a surety bond has been posted for a defendant's release; rather, its application is limited to cases in which the defendant's release was obtained by the deposit of cash, a check, or

certain securities with the trial court in lieu of a surety bond (MCL 765.12, 765.15[a]; MSA 28.899, 28.902[a]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *George B. Mullison,* Prosecuting Attorney, and *Martha G. Mettee,* Assistant Prosecuting Attorney, for the people.

*Vincent A. Scorsone* and *Joseph Samuel Scorsone* for the defendant.

BOYLE, J. The question before the Court is whether the forfeiture set-aside provision of MCL 765.15(a); MSA 28.902(a) applies in cases where a criminal defendant's release was secured by the posting of a surety bond with the trial court. We hold that the set-aside provision applies only where the defendant's release was obtained by the placement of cash, a check, or certain securities on deposit with the trial court, pursuant to MCL 765.12; MSA 28.899, in lieu of the more typical surety bond.

I

On September 9, 1985, defendant Pearl Evans failed to appear for habitual offender proceedings. At the time, she was free on a $15,000 surety bond posted by defendants Edward and Katherine Kosciuszko, doing business as Kozy Bail Bond. The judge issued an order forfeiting the bond on September 18, 1985.

Plaintiff filed a motion for entry of judgment against the surety. A hearing on the motion was held on February 10, 1986, after two postponements. At the hearing, Kozy's counsel stated that his client was confident he could locate Evans, and requested a sixty-day extension of the hearing. The trial judge instead agreed to stay execution of the

judgment of forfeiture for sixty days. It appears
from the record that the judge believed he could
amend the judgment of forfeiture under MCL
765.28; MSA 28.915, if Kozy eventually produced
Evans. The judgment of forfeiture with a sixty-day
stay was signed on March 12, 1986.[1] Evans was
apprehended through the efforts of Kozy and re-
turned to custody on May 7, 1986. Kozy spent
$6,500 to locate and apprehend Evans.

Kozy made no effort to secure remission of the
forfeited bond until February 17, 1987, when it
filed a motion to set aside the forfeiture and
judgment. Kozy argued that it was entitled to
remission of the forfeited bond because it had

---

[1] The judgment read, in part:

  [T]he recognizance having been forfeited by the Court for
failure of the Defendant to appear as ordered by the Court; the
Surety having appeared by counsel to respond to the Motion
[for Entry of Judgment Against Surety at] a hearing in open
Court on February 10, 1986; the Surety having offered no
reason at that time to deny the Motion of the People for
Judgment, but rather requesting a Stay of Execution of Judg-
ment for sixty (60) days from the date of Entry of Judgment in
order to permit the Surety to continue its efforts to locate the
Defendant and return her to custody; the People having not
objected to the Entry of Judgment in that manner, although
the People reserved comment on whether the Judgment should
be reduced by the Court pursuant to MCL 765.28 [MSA 28.915]
if the Defendant is returned to custody by the Surety within
said sixty (60) days; and the Court at this time having given
counsel the opportunity to submit legal authority on the issue
of whether or not a remittitur is appropriate under MCL 765.28
[MSA 28.915] where a surety returns a defendant to custody
prior to execution of judgment; and the Court being otherwise
fully advised in the premises;

  IT IS HEREBY ORDERED that Judgment in the amount of
Fifteen Thousand Dollars ($15,000.00) is hereby entered against
the Surety and in favor of the People of the State of Michigan,
payable to the County of Bay.

                          *  *  *

  IT IS FURTHER ORDERED that execution of this Judgment is
hereby stayed for sixty (60) days from the date hereof, after
which the People may take any and all necessary proceedings
to enforce and collect this Judgment, plus the interest thereon.

produced Evans within sixty days of the March 12, 1986, judgment, and, in the alternative, because it had satisfied the requirements for remission of forfeited bonds under MCL 765.15; MSA 28.902. This statute provides:

(a) If such bond or bail be forfeited, the court shall enter an order upon its records directing, within 45 days of the order, the disposition of such cash, check or security, and the treasurer or clerk, upon presentation of a certified copy of such order, shall make disposition thereof. *The court shall set aside the forfeiture and discharge the bail or bond, within 1 year from the time of the forfeiture judgment, in accordance with subsection (b) of this section if the person who forfeited bond or bail is apprehended and the ends of justice have not been thwarted and the county has been repaid its costs for apprehending the person.*

(b) If such bond or bail be discharged, the court shall enter an order to that effect with a statement of the amount to be returned to the depositor. Upon presentation of a certified copy of such order, the treasurer or clerk having such cash, check or security shall pay or deliver the same to the person named therein or to his order.

(c) In case such cash, check or security shall be in the hands of the sheriff or any officer, other than such treasurer or clerk, at the time it is declared discharged or forfeited, the officer holding the same shall make such disposition thereof as the court shall order, upon presentation of a certified copy of the order of the court. [MCL 765.15; MSA 28.902. Emphasis added.]

In arguing that § 15 applied, Kozy relied on *People v Pavlak,* 99 Mich App 190; 297 NW2d 878 (1980). The Court in *Pavlak* disagreed with a decision of another panel of the Court of Appeals which held that § 15 did not apply to commercial surety bonds. *People v Johnson,* 72 Mich App 702;

250 NW2d 508 (1976). After considering arguments from counsel on Kozy's motion of February 23, 1987, the trial court entered an "amended judgment" on March 11, 1987, that stated, in part:

> IT IS HEREBY ORDERED pursuant to MCL 765.28 [MSA 28.915] that the Judgment previously entered on March 12, 1986 against Surety is hereby modified such that the surety shall pay to the County of Bay $15,000.00, plus 12% interest from October 8, 1985 but the Surety is hereby entitled to a setoff of $6,500.00 against that sum for its expenses in locating and returning Pearl Lee Evans to custody.

Kozy appealed this amended judgment in the Court of Appeals. The Court of Appeals agreed with the panel in *Pavlak* and decided that the trial judge should have remitted Kozy's bond under § 15. *People v Evans,* 168 Mich App 654; 425 NW2d 209 (1988). The Court of Appeals certified that its decision conflicted with that of the panel in *Johnson,* and we granted plaintiff's application for leave to appeal.[2]

II

The statutory provision which we construe today, § 15 of chapter V of the Code of Criminal Procedure, MCL 765.1 *et seq.;* MSA 28.888 *et seq.,* is one of a number of sections within that chapter which concern the right of a party to deposit cash, a check, or certain negotiable securities with a trial court in order to secure a defendant's release

---

[2] Following our decision to review this case, another panel of the Court of Appeals decided to follow the *Johnson* decision. *People v Munley,* 175 Mich App 399; 438 NW2d 292 (1989) (§ 15 does not afford relief to a commercial surety who has returned an errant defendant to custody after the appearance date has passed, but remission was nevertheless proper under § 4835 of the Revised Judicature Act, MCL 600.4835; MSA 27A.4835).

when bail is either required or permitted.[3] Sections 12 through 18 of Chapter V were originally enacted together in 1919, in substantially the same form in which they exist today, as a single, comprehensive act entitled:

An act to provide for the furnishing and acceptance of cash, certified checks or certain obligations of the United States government or of municipal corporations in lieu of bonds or bail of other character required or permitted by law. [1919 PA 332.][4]

They are thus considered "in pari materia," and as such must be read and construed together. *Wayne Co v Dep't of Social Welfare,* 343 Mich 475, 480; 72 NW2d 200 (1955); *Van Antwerp v State,* 334 Mich 593, 605; 55 NW2d 108 (1952).

The first of these sections, § 12, establishes the right of a party to deposit cash, a check, or certain [negotiable] securities with the court, "in lieu" of other forms of bond or bail:

In any criminal cause or proceeding where bond or bail of any character is required or permitted for any purpose, the party or parties required or

---

[3] As explained below, such a deposit, made in the full amount set as bail, must be distinguished from other more common methods of securing the defendant's release, such as depositing only ten percent of the bail amount with the court, MCR 6.106(D)(3)(b), or posting a "surety bond." Surety bonds may be posted by a commercial "bondsman," who collects a fee for this service from the defendant or other party interested in securing his release, see, e.g., *Citizens for Pretrial Justice v Goldfarb,* 415 Mich 255; 327 NW2d 910 (1982); MCL 750.167b; MSA 28.364(2), or by a private individual, who generally pledges real property to the court in exchange for the defendant's release. See MCL 765.20 *et seq.*; MSA 28.907 *et seq.* In this case, defendant Kozy Bail Bond, a commercial "bondsman," executed a surety bond with the court in order to secure defendant's release.

[4] Chapter V of the Code of Criminal Procedure, which concerns the subject of bail generally, was "created" by 1927 PA 175. This new statute comprised both original sections and provisions already in existence elsewhere, such as 1919 PA 332.

permitted to furnish such bail or bond may deposit, in lieu thereof, in the manner herein provided, cash, certified check on any state or national bank in this state, obligations of the United States government negotiable by delivery or bonds of any municipality of this state negotiable by delivery, equal in amount to the amount of the bond or bail so required or permitted.

Section 13 describes the procedure to be followed in depositing "[s]uch cash, check or security" with the court, which must then, under § 14, treat the deposit as the equivalent of the bond or bail "in lieu" of which it has been deposited.

Section 15, the provision at issue in this case, addresses what happens to the "cash, check or security" in the event of either a forfeiture or a discharge of the "bond or bail." Section 16 provides that the "[c]ash, check[ ] or securit[y]" deposited with the court shall not be subject to garnishment or attachment, although it may be assignable under certain circumstances. Section 17 provides that the deposit is to be placed in a special fund, the interest on which is to be received by the state or local government "according to the nature of the case," except that interest coupons attached to the government bonds or securities may not be detached. Lastly, § 18 allows any depositor to redeem the cash, check, or securities deposited with the court by "substituting the bond originally required or permitted."

The question in this case concerns the applicability of the second sentence in § 15(a), which states that the court "shall set aside the forfeiture and discharge the bail or bond, within 1 year from the time of the forfeiture judgment" if certain conditions are met. This sentence was not a part of the original 1919 legislation; it was added to § 15(a) by 1970 PA 226.

The defendant-surety contends, and the Court of Appeals has agreed, that this later-enacted set-aside provision is not limited in application to situations in which cash, checks, or certain securities have been deposited with the court on a defendant's behalf, but applies even where the defendant's release was obtained by the execution of a surety bond with the court. In our opinion, to conclude that § 15(a), or any part of it, was ever intended to apply in cases where cash, checks, or certain securities were not actually placed *on deposit* with the court greatly exalts form over substance and completely fails to recognize the limited application of, and the relationship among, §§ 12 through 18.

A

Prior to the addition in 1970 of the set-aside provision, § 15 plainly was intended to apply only where cash, checks, or securities had been deposited with the court. Nothing makes this conclusion more clear than the fact that *all* of the other sections with which it was originally enacted were, and still are, exclusively concerned with deposits with the court.

As explained above, § 12 creates the right to deposit such instruments; § 13 describes the procedures for doing so; § 14 makes the deposit the equivalent of bond or bail; § 16 prohibits garnishment or attachment of the deposits, but allows assignment in certain circumstances; § 17 explains who collects interest on the deposits; and § 18 allows a depositor to regain the cash, checks, or securities by substituting the bond originally required. Is it possible, remembering that these provisions are in pari materia and thus to be considered together, *Wayne Co, supra,* that § 15 is to be

read as applicable to something different from these others? We think not.

Moreover, the procedures established in that section with respect to forfeiture and discharge clearly contemplated the court's having to direct the disposition of—i.e., to order the clerk or treasurer to either keep or return—that which has been *deposited* with it. While a surety bond is executed with the court in exchange for the defendant's release, it is not "deposited" with the court in the sense that something needs to be "returned" to the surety by the treasurer or clerk, who will "pay or deliver" it to the surety or to its order.[5]

The question thus becomes whether the set-aside provision itself, which was added to § 15(a) in 1970, was intended to apply both to deposits and surety

[5] We are not at all troubled, in reaching this conclusion, by the fact that § 15 speaks generally of "bond or bail" being forfeited, and of "bail or bond" being discharged, rather than of "cash, checks, or securities" being forfeited or discharged. While the Legislature's use of the terms in this manner is somewhat inartful, it is hardly surprising. This Court itself has referred to the deposit of cash, checks, or securities under this statute as the posting of both "cash bail," *Bingham v Montcalm Co,* 251 Mich 651, 652; 232 NW 348 (1930), and "cash bond," *People v Faculak,* 325 Mich 56, 59; 37 NW2d 709 (1949). In *People v Benmore,* 298 Mich 701, 704, 706; 299 NW 773 (1941), which involved a deposit of cash to secure the defendant's release, this Court used both of those terms interchangeably, and spoke as well of the defendant's "bond" being "ordered forfeited."

The best evidence, however, that the terms "bail" and "bond" are used in a general rather than specific sense in § 15 is their obvious use in the same manner in the following section, § 16, which concerns the extent to which such deposits are subject to legal process. That section cannot be concerned with anything but deposits with the court. Surety bonds are not subject to garnishment or attachment even in the absence of a statute such as this. Nor can they be assigned. Section 16 must, therefore, be limited in application to deposits of cash, checks, or securities. Yet, that section, too, speaks of a court having jurisdiction to "discharge the bond or bail," and refers to the court's function as that of discharging "such bail or bond . . . ." This use of these same terms in § 16, which clearly is addressed only to deposits with the court, seems to preclude any argument that their use in § 15, with which it is in pari materia, implies a broader scope.

bonds. We reject this contention, however, because we do not believe that the Legislature would have placed a set-aside provision intended to apply to surety bonds, or any other sort of bail, in the midst of a number of sections whose application until then had been limited to deposits of cash, checks, or securities.

Indeed, for us to conclude that the forfeiture set-aside clause *alone* among these other provisions applied in all bail or bond cases, and not just those involving deposits with the court, would violate well-established rules of statutory construction regarding amendatory language. As explained in 1A Sands, Sutherland Statutory Construction (4th ed), § 22.35, pp 296-297, "[i]n the absence of express evidence to the contrary, the section as amended is to be construed to have the same scope as the unaltered sections of the original statute. The unchanged sections and the amendment are to be interpreted so that they do not conflict." Or, as stated by this Court in *People ex rel Attorney General v Michigan Central R Co,* 145 Mich 140, 150; 108 NW 772 (1905):

> [Generally, an] amendment [of a statute] is to be considered as a part of the original act, and the entire act as amended . . . be given the construction as if the amendment was a part of the original act.

What this means is that in the absence of any indication to the contrary, we must assume that the amendment of § 15(a), i.e., the set-aside provision, was intended to be as limited in scope as those sections of which it became a part.

It is no answer to say that the Legislature may

not have realized that the section into which it was placing the forfeiture provision until then had applied only where deposits had been made with the court. In our opinion, the relationship among these seven sections (§§ 12-18), and their "separateness" from the other sections in chapter V, is obvious. One need not be aware of the particular history of these sections to recognize that relationship and limited application.[6] Plainly, the set-aside provision itself applies only where there are deposits of cash, checks, or securities with the court.[7]

---

[6] We are somewhat surprised by the dissent's suggestion that the Legislative Service Bureau was unaware, in 1970, that § 15(a) until then had applied only to deposits with the court (as Justice LEVIN's own opinion acknowledges, *post,* p 335, n 9), and that no member of the Legislature could have known this either. In *People v Harrison,* 194 Mich 363, 369; 160 NW 623 (1916), this Court long ago acknowledged the general rule of statutory construction that the Legislature is

> presumed to know of and legislate in harmony with existing laws, and the language of every enactment is, so far as possible, to be construed consistent with other laws which it does not in plain and unequivocal terms modify or repeal.

We recently reaffirmed this rule in *Endykiewicz v State Hwy Comm,* 414 Mich 377, 385; 324 NW2d 755 (1982), an opinion signed by Justice LEVIN.

In our view, this presumption that the Legislature acts with knowledge of, and in harmony with, existing legislation necessarily extends not only to "other" laws, but also to the very piece of legislation the Legislature acts to amend. Indeed, we think the presumption should apply with even greater force in such cases, as explained above. To conclude otherwise is to take a rather dim view of the legislative process. Unlike Justice LEVIN, we refuse to believe that the Legislature either cannot or does not read its own statutes.

[7] We do not disagree that, given that the forfeited cash, checks, or securities are unlikely to be in the same form up to a year after the forfeiture as when deposited, the Legislature may have unnecessarily confused matters by indicating that the set aside should be pursuant to § 15(b). We do not believe that this imprecision is fatal, however, since even as originally enacted, § 15(b) did not admit of a literal interpretation. In our view, that section cannot be read literally to require the court to return the same cash or the same uncashed check, regardless of whether the bail provisions were complied with and the bail or bond was discharged or whether it was forfeited.

B

Despite the limited scope of § 15 and its companion sections, the Court of Appeals found it to be "sound policy to allow a [commercial] surety to recoup a forfeited bond." *People v Evans, supra,* p 659. It agreed with the decision of the panel in *People v Pavlak, supra,* pp 196-197, that to refuse to provide such relief to commercial bondsmen would create a disincentive on their part to find and return absconded defendants:

> Furthermore, it is our opinion that a rule which denies corporate sureties the relief provided for in MCL 765.15(a) [MSA 28.902(a)] is unsound as a matter of public policy. We have previously noted that "the surety's function on the bail-bond contract operates to relieve the state from policing court attendance of bailed defendants and thus furthers the state's interests." *Citizens for Pretrial Justice v Goldfarb,* 88 Mich App 519, 567; 278 NW2d 653 (1979) (BRENNAN, J.). GCR 1963, 790.4(b) also recognizes the necessity of a surety bond to secure the appearance of a criminal accused in some circumstances.
>
> It is well recognized in Michigan that a professional bondsman has the power to arrest an absconding client. *Citizens for Pretrial Justice v Goldfarb, supra,* 556. It is likely that a surety would spend large amounts of time and capital in locating and apprehending an absconder. If we now preclude the surety from recouping the amount of the forfeited bond, we will, as a practical matter, take away or at least greatly diminish his incentive to pursue such clients. This result would be detrimental to the court system of this state.

We need not resort to considerations of proper public policy in order to interpret § 15(a). While there may be good reasons for extending the pe-

riod for the remission of forfeitures to commercial
bail bonds as well as deposits with the court, such
reasons are irrelevant for our purposes. The ques-
tion in this case is not whether the set-aside
provision *should* apply only to deposits of cash,
checks, or securities, but rather whether it *does.*
For the reasons explained above, we can answer
that question in the affirmative without engaging
in a lengthy analysis of the purposes behind its
narrow scope.[8]

We are not persuaded, in any event, that policy
considerations in fact support the application of
§ 15(a) in surety bond cases, as the Court of Ap-
peals concludes. Given the lack of legislative his-
tory regarding the forfeiture provision, we are
unlikely ever to arrive at the precise reasoning or
"policies" behind its enactment. We should ob-
serve, however, that it was added to the statute
during the bail reform movement of the 1960's and
70's, at the heart of which was a growing dissatis-
faction with the existing commercial bail bond
system. Critics of this system charged, among
other things, that the idea of giving private busi-
nessmen so significant a role in determining
whether an individual is to be released from jail
pending trial is fundamentally at odds with our

[8] We are not presented with a claim that it is somehow improper
for the Legislature to treat deposits with the court differently than
surety bonds. The defendant does not argue, for example, that this
difference in treatment constitutes a violation of its constitutional
guarantee of equal protection, although one of the cases it cites in
support of its interpretation of § 15, *People v Pavlak, supra,* does
conclude that there is "no rational basis" for such unequal treatment.
*Id.,* p 196. The question in this case is simply whether the statute as
written does treat deposits differently from surety bonds.

Moreover, the distinction made by the Court of Appeals in this case
and *Pavlak* between "commercial" and "individual" sureties for pur-
poses of interpreting § 15(a) is in any case improper. In our view, it is
unimportant *who* posts the surety bond. What is important for
purposes of § 15 is whether there has been a deposit of cash, check, or
securities rather than an execution of a surety bond.

system of justice,[9] and that the practice results in economic discrimination against those defendants who are financially incapable of raising the fee required by the bondsman, and who must therefore remain in jail pending trial.[10]

Even the timing of the provision's enactment, however, cannot fully explain the reasons behind it. We cannot know, for example, whether the Legislature was generally joining the movement against the commercial bail bond business by making full cash deposits more "attractive" than commercial bonds (because of the longer period for remission of deposits in lieu of surety bonds). Nor can we know whether it specifically intended to exclude commercial surety bonds from the longer set-aside period by placing the provision in § 15(a), which, again, deals exclusively with deposits, because it wanted to actually *discourage* long-term searches for absconded defendants by bondsmen.[11]

It is also possible that the Legislature was sim-

[9] See, e.g., *Pannell v United States,* 115 US App DC 379, 380; 320 F2d 698 (1963) (Wright, J., concurring):

> The effect of such a system is that the professional bondsmen hold the keys to the jail in their pockets. They determine for whom they will act as surety—who in their judgment is a good risk. The bad risks, in the bondsmen's judgment, and the ones who are unable to pay the bondsmen's fees, remain in jail. The court and the commissioner are relegated to the relatively unimportant chore of fixing the amount of bail.

[10] This bail reform "movement" began with the creation of the Vera Foundation in 1961, and its establishment of the Manhattan Bail Project that same year. It was the result of this undertaking that "awoke" courts and others to the inequities and waste of the bail system. For a general history of the bail reform movement, see Thomas, *Bail Reform in America* (Berkeley: Univ of Cal Press, 1976); Wice, *Freedom for Sale: A National Study of Pretrial Release* (Lexington: DC Heath & Co., 1974); Goldfarb, *Ransom: A Critique of the American Bail System* (New York: Harper & Row, 1965).

[11] See, e.g., New York Senate Research Service Task Force on Critical Problems, *Accused and Unconvicted: A Brief on Bail Practices* (1978), p 14.

ply formally extending to depositors the same sort
of right to remission or relief from forfeiture that
existed, albeit with less formal certainty, for com-
mercial bondsmen.[12] The provision's placement
might also merely reflect an intentional, and not
unusual, distinction between commercial entities
and individuals. The same sort of distinction is
found, for example, in our Uniform Commercial
Code, MCL 440.1101 *et seq.*; MSA 19.1101 *et seq.*,
which distinguishes between merchants and other
buyers and sellers.[13]

We do not suggest that the legislative history of
the amendment points to any of the above as the
purpose behind its enactment. Rather, the point is
that there are any number of reasons why the
Legislature might have chosen to create a set-aside
provision that applies only to deposits with the
court, and that we should not presume otherwise.
If anything, the presumption should be that the
Legislature did intend to limit the amendment's
application. In our view, the most persuasive evi-

---

[12] Consider, for example, this passage from *Ransom,* n 10 *supra,* at
pp 112-113:

> When a defendant who is free on bail fails to appear at trial,
> the very essence of our money-based bail system is that the
> bond shall be forfeited. This inevitability should be the very
> inducement that underlies the system. Yet, in practice, it is
> rare that bail money is in fact forfeited. Judges will often give
> the surety some time to make good on his assurance by finding
> the defendant and presenting him for later trial. Failing that,
> courts will often remit forfeitures on one ground or another
> even though the bondsman has failed to fulfill his role if the
> defendant disappears. Often judges will remit forfeitures even
> in cases where the defendant does not appear, late or ever.
> Where the bondsman shows due diligence in pursuing the
> disappearing defendant or pleads extenuating circumstances to
> account for his failure to produce a defendant, courts will often
> excuse his failure.

[13] Section 2-509 of the UCC, MCL 440.2509; MSA 19.2509, which
governs risk of loss, is a particularly appropriate example of this
distinction. See also § 2-205 (firm offers); § 2-314 (implied warranty of
merchantability); § 2-609 (adequate assurance of performance).

dence of a legislative intent to limit the right to relief under § 15(a) is our inability to conclude—in light of the historical context in which the amendment was passed—that the Legislature could have intended to so ensure the profitability of the bondsman's undertaking.

In all cases, whether the defendant appears on time or not, the bondsman is entitled to keep the ten percent fee he charges for his services. In addition, he often secures collateral from the defendant or his family or relatives for as much of the other ninety percent of the bond amount as he can, in the event the defendant does not appear. In essence, the bondsman's decision to bail a particular defendant is a business decision, reflecting an evaluation of whether the defendant is likely to appear for trial, his recourses in the event the defendant does not appear, and, of course, the fee he will in any event collect. We find it doubtful, given the time and context in which the amendment was passed, that the Legislature intended to remove a good part of this "risk factor" from the bondsman's decision by ensuring not only his ten percent fee but his freedom from liability even if the defendant fails to appear, so long as he is captured within a year.

C

Finally, it should be noted that the defendant-surety in this case has not been left without a remedy if § 15(a) is found unavailable. Section 28 of chapter V sets forth the procedures for entering a forfeiture judgment against a surety in the event of a default on a recognizance. It includes an opportunity for the surety to appear before the trial court to explain why judgment should not be entered against it, in whole or in part:

> In addition to any other method available, it is
> hereby provided that whenever default shall be
> made in any recognizance in any court of record,
> the same shall be duly entered of record by the
> clerk of said court and thereafter said court, upon
> the motion of the attorney general, prosecuting
> attorney or city attorney, may give the surety or
> sureties 20 days' notice, which notice shall be
> served upon said surety or sureties in person or
> left at his or their last known place of residence.
> *Said surety or sureties shall be given an opportu-*
> *nity to appear before the court on a day certain*
> *and show cause why judgment should not be en-*
> *tered against him or them for the full amount of*
> *such recognizance. If good cause is not shown, the*
> *court shall then enter judgment against the surety*
> *or sureties on said recognizance for such amount*
> *as it may see fit not exceeding the full amount*
> *thereof.* Execution shall be awarded and executed
> upon said judgment in like manner as is provided
> in personal actions. [MCL 765.28; MSA 28.915.
> Emphasis added.][14]

In addition, after a judgment has been entered
against a surety, it stands as any judgment ren-
dered in a personal action, and, as the Court of
Appeals stated in *Johnson, supra,* p 709, "[i]t is
enforceable, reviewable and appealable by way of
the same provisions and by other statutes and
court rules which may apply to the specific
situation . . . ." The most significant of these pro-
visions is MCL 600.4835; MSA 27A.4835, which
provides, in pertinent part:

> The circuit court for the county in which such
> court was held, or in which such recognizance was

---

[14] It was under this provision that the trial court in this case
awarded the defendant surety a $6,500 "set-off" against the $15,000
forfeiture. The prosecution has not appealed the trial court's action in
this Court, and has in fact requested that this Court affirm the
decision of the trial court. We therefore decline to comment on the
applicability of that provision in this case.

taken, may, upon good cause shown, remit any penalty, or any part thereof, upon such terms as appear just and equitable to the court.

For purposes of this statute, the term "penalty" includes forfeited recognizances. MCL 600.4801; MSA 27A.4801. The surety in this case has not been left without a remedy.[15]

---

[15] We note, lastly, the defendant surety's argument that the term "security" in the phrase "cash, check or security" is broad enough to encompass a commercial surety bond. On this point, however, we find Judge GILLIS' discussion in *People v Johnson, supra,* persuasive:

Within chapter 5 there are seven statutes (§§ 12-18) which deal with the same subject matter, that is, the "deposit of cash, certified check or certain securities in lieu of bond or bail." Accordingly, we interpret the statutes in connection with each other. Section 12 sets out the types of securities included within the heading "certain securities" which may be deposited. These are, "obligations of the United States Government negotiable by delivery or bonds of any municipality of this state negotiable by delivery." The phrase "cash, check or security" is found in §§ 13 and 16 in addition to § 15. Sections 17 and 18 contain the phrase "any cash or securities." It is apparent to us that the phrases "such cash, check or security," "the cash, check or security" and "any cash or securities" all refer to the items deposited in lieu of bail or bond. In order to be remitted in accordance with § 15, the bail or bond must first be deposited as provided in § 13, and in order to be so deposited the item must be one that is acceptable under § 12. Surety bonds are not listed within § 12 as a type of "certain security." [*Id.,* p 707.]

To this explanation, we add only a brief reference to § 18, which states:

Any person, firm or corporation availing himself or itself of the provisions of this chapter may, at any time before forfeiture of the same, redeem any cash or securities so deposited by *substituting the bond originally required or permitted.* [Emphasis added.]

This provision, which allows a party to retrieve from the court any "cash, [checks] or securities" deposited with it by "substituting the bond originally required or permitted"—e.g., by executing a surety bond in the same amount—demonstrates the clear distinction between the negotiable securities referred to initially in § 12 and the kind of "security" with which a court is provided when it accepts a surety bond.

CONCLUSION

The forfeiture set-aside provision of § 15(a) does not apply in cases where a surety bond has been posted for a defendant's release; rather, its application is limited to cases in which the defendant's release was procured by depositing with the court cash, checks, or certain securities in the amount set as bail. Where a surety bond has been posted, no such deposit exists.

The decision of the Court of Appeals is therefore reversed, and the decision of the trial court is reinstated.

RILEY, C.J., and BRICKLEY, CAVANAGH, ARCHER, and GRIFFIN, JJ., concurred with BOYLE, J.

LEVIN, J. (*dissenting*). Twenty years ago, in 1970, the Legislature added a sentence to § 15[1] of the bail chapter (chapter V of the Code of Criminal Procedure) concerning forfeiture of bond or bail, providing that the court shall set aside a forfeiture if the person released on bail is apprehended within one year, the ends of justice have not been thwarted, and the county has been repaid the cost of apprehending the person.

The majority today holds that the forfeiture set-aside provision, applies only where the release of

---

[1] The emphasized words were added:

If such bond or bail be forfeited, the court shall enter an order upon its records directing, within 45 days of the order, the disposition of such cash, check or security, and the treasurer or clerk, upon presentation of a certified copy of such order, shall make disposition thereof. *The court shall set aside the forfeiture and discharge the bail or bond, within 1 year from the time of the forfeiture judgment, in accordance with subsection (b) of this section if the person who forfeited bond or bail is apprehended and the ends of justice have not been thwarted and the county has been repaid its costs for apprehending the person.* [MCL 765.15(a); MSA 28.902(a).]

the defendant from custody was obtained by the deposit of cash, a certified check, or certain securities[2] with the trial court[3] and does not apply where, to use language in the title of 1919 PA 332, "bonds or bail of other character required or permitted by law" are furnished.[4] I would hold that the forfeiture set-aside provision applies to all bonds or bail.

I

Pearl Evans failed to appear. An order was entered forfeiting a $15,000 surety bond posted by Kozy Bail Bond. Kozy apprehended Evans within the one-year period.[5] The Court of Appeals, agreeing with one panel[6] and disagreeing with another,[7] held that the trial judge should have set aside the forfeiture.[8]

The majority holds that because Evans was not released as a result of a deposit of cash, a certified check, or government securities with the clerk, but rather as a result of Kozy's furnishing a surety

[2] The opinion continues: "in lieu of the more typical surety bond." *Ante*, p 316.

Today, typically, release is on personal recognizance. It appears that the second most typical or common means of securing a defendant's release is the posting of ten percent of the amount of bail set by the magistrate.

[3] The majority states that the forfeiture/set-aside provision applies where cash, certified check, or government securities are deposited with the clerk of the court. The deposit may be with "the clerk of the court, if under bond, or with the treasurer of the county, city, village or township within which the bail or bond is to be furnished or, in any case, with the state treasurer." MCL 765.13; MSA 28.900.

[4] "[B]onds or bail of other character required or permitted by law" were developed at common law before the enactment of 1919 PA 332, with little structure in the statutes until the enactment in 1927 of the Code of Criminal Procedure. Then, it appears, for the first time the common law and such statutory provisions as had been enacted were, for the most part, pulled together and enacted as chapter V.

[5] It expended $6,500 in doing so.

[6] *People v Pavlak,* 99 Mich App 190; 297 NW2d 878 (1980).

[7] *People v Johnson,* 72 Mich App 702; 250 NW2d 508 (1976).

[8] *People v Evans,* 168 Mich App 654; 425 NW2d 209 (1988).

bond, that the forfeiture set-aside provision does not apply. The majority reaches its conclusion on two bases:

(1) the forfeiture set-aside provision was added to a section of the statute which, as originally enacted in 1919—over fifty years before the 1970 amendment—provided for deposit of cash, certified checks, or government securities in lieu of a surety bond.[9] The majority reasons that the Legislature, aware of this history, intended to limit the forfeiture set-aside provision to forfeitures of cash, certified checks, or government securities;

(2) a contrary construction would "ensure the profitability of the bondsman's undertaking."[10]

I would hold, absent evidence of a legislative intent to place a gloss on the literal language of the statute—applicable in terms to any forfeiture of "bail or bond"—so that the forfeiture set-aside provision applies only to bail or bond provided by the deposit of cash, certified checks, or government securities, that the forfeiture set-aside provision also applies where the bail or bond is provided by a commercial surety or an individual surety, such as a friend or relative of the defendant.

II

The majority states that it "need not resort to

---

[9] Section 15, as originally enacted as part of 1919 PA 332, was concerned only with, again referring to the language of the title of that act, the "furnishing and acceptance of *cash, certified checks or certain obligations of the United States government or of municipal corporations* in lieu of bonds or bail of other character required or permitted by law." (Emphasis added.)

Section 15(a) of the Code of Criminal Procedure continues that concept, stating that "[i]f such bond or bail be forfeited, the court shall enter an order upon its records directing . . . the disposition of such cash, [certified] check or security [i.e., the United States government or municipal bonds]." Section 15(b) continues the concept, speaking of the return of the cash, check, or security "[i]f such bond or bail be discharged."

[10] *Ante,* p 330.

considerations of proper public policy in order to interpret § 15(a),"[11] but, curiously, appears to rest its decision on its perception of public policy:

> In our view, the most persuasive evidence of a legislative intent to limit the right to relief under § 15(a) is our inability to conclude—in light of the historical context in which the amendment was passed—that the Legislature could have intended to so ensure the profitability of the bondsman's undertaking.
>
> In all cases, whether the defendant appears on time or not, the bondsman is entitled to keep the ten percent fee he charges for his services. In addition, he often secures collateral from the defendant or his family or relatives for as much of the other ninety percent of the bond amount as he can, in the event the defendant does not appear. In essence, the bondsman's decision to bail a particular defendant is a business decision, reflecting an evaluation of whether the defendant is likely to appear for trial, his recourses in the event the defendant does not appear, and, of course, the fee he will in any event collect. We find it doubtful, given the time and context in which the amendment was passed, that the Legislature intended to remove a good part of this "risk factor" from the bondsman's decision by ensuring not only his ten percent fee but his freedom from liability even if the defendant fails to appear, so long as he is captured within a year.[12]

The majority's explanation for its result is imaginative. There is no legislative history indicating that a single legislator expressed the concept set forth in the majority opinion.

The majority's analysis is contradictory. The majority recognizes that the surety "often secures collateral from the defendant or his family or

[11] *Ante,* p 326.
[12] *Ante,* pp 329-330.

relatives"[13] for the entire amount of its exposure. Thus, the result of the majority's decision may not be to reduce the profitability of the bondsman's undertaking, but rather to cause loss to family, relatives, or friends who provide the collateral without which the surety would not have furnished the bond.

I suggest that before proceeding on the hypothesis that the result of its narrow reading of the forfeiture set-aside provision will be a reduction in the profitability of the business of commercial suretyship that the Court should remand for the taking of evidence. The trial court could invite commercial sureties and others to introduce evidence concerning the extent commercial sureties act with or without collateral, whether limiting the applicability of the forfeiture set-aside provision will result in an increase in premium costs to defendants, and in general who will defray any added cost: commercial sureties, family, relatives or friends of defendants, or taxpayers who, because of increased costs in obtaining a surety bond, may be called upon to pay the cost of housing defendants who otherwise might be released on bond.

I do not wish to be understood as suggesting that the correct disposition of this case is a remand for that purpose. I would hold that the forfeiture set-aside provision applies to all forfeitures of bail or bond, and suggest a remand only because I believe the majority's construction is premised on assumptions regarding the facts relevant to the underwriting of commercial surety bonds that have little or no reality.

III

Chapter V of the Code of Criminal Procedure

[13] *Ante,* p 330.

applies generally to bail without regard to whether the "security" for the defendant's appearance is a surety bond or other collateral. The sentence added in 1970 might have been located in § 15(a) simply because the first sentence of § 15(a) speaks of the entry of an order where "bond or bail" is forfeited, and the added language concerns setting aside such a forfeiture. The Legislative Service Bureau may have advised putting the language in this subsection because it appeared to the bureau to be the appropriate place for the language without anyone having been aware of the possible construction, now placed on such choice of location, stemming from the original form of the language in 1919, fifty-one years earlier, or the procedural code revision in 1927, forty-three years earlier.

While enlightening, the forty-three-/fifty-one-year "prehistory," long before the 1970 enactment, has little bearing on the question at hand. What should be determinative is what the Legislature intended in 1970. One can be sure that no member of the 1970 Legislature was aware of the forty-three-/fifty-one-year "prehistory" related in the majority opinion.

While the Legislature could have been clearer, and the "in accordance with subsection (b) of this section" clause lends support to the majority's conclusions, since the first clause of subsection (b), providing for the entry of an order of discharge, gives life to the language added in 1970 in all cases without regard to the form of the "bail or bond," the conclusion that the 1970 Legislature intended that the added language apply only to bail or bond provided by the deposit of cash, checks, or government securities, and not to a

surety or other bond, or to so distinguish between
such forms of collateral, has not been justified.[14]

---

[14] The first clause of the language added in 1970 states that the
court shall set aside the forfeiture reflected in the forfeiture judgment
"and *discharge the bail or bond*" (emphasis added) if within one year
from the date of the forfeiture judgment "the person who forfeited
bond or bail" is apprehended, the ends of justice have not been
thwarted, and the county has been repaid its costs for apprehending
the person.

The added language also states that the setting aside shall be "in
accordance with subsection (b) of this section," which provides: "If
such bond or bail be discharged, the court shall enter an order to that
effect with a statement of the amount to be returned to the depositor.
Upon presentation of a certified copy of such order, the treasurer or
clerk having such cash, check or security shall pay or deliver the
same to the person named therein or to his order." MCL 765.15(b);
MSA 28.902(b).

To be sure subsection (b) provides for a statement "of the amount to
be returned to the *depositor*" (emphasis added), and that the trea-
surer or clerk "having such cash, check or security shall *pay or
deliver the same* to the person named therein or to his order."
(Emphasis added.)

Subsection (b) does literally appear to contemplate the return of the
very check or security (cash being fungible) deposited. But that would
not be possible if, after the forfeiture judgment and before a set-aside
order is entered, the check or security has been turned into cash.
Thus, that portion of subsection (b) cannot literally be applied where
the check or security has been turned into cash.

And clearly subsection (b) cannot be applied if the county had
collected on a personal recognizance or from a surety on the forfei-
ture judgment. (In the instant case, the county had *not* collected on
the forfeiture judgment before the defendant was apprehended.)

That portion of subsection (b) which provides that "[i]f such *bond or
bail* be discharged" (emphasis added), the court shall "enter an order
to that effect," can be applied to any set-aside order whether the
defendant's release from custody was obtained by the furnishing of a
personal recognizance, a surety or other bond, cash, a certified check,
or government securities.